NESBITT, Senior Judge.
Jorge Carbon, a Uruguayan resident, and Adiler S.A., a Uruguayan company, (referred to herein collectively as Carbon), filed the instant action to recover damages Carbon claimed were caused by the fraud and negligent misrepresentations of Atlantic Security Bank (Atlantic). Atlantic had issued a power of attorney which was used by Carlos Armele, a Paraguayan citizen and the alleged perpetrator of a bank sale scheme to which Carbon fell victim. Carbon maintained that he was lured into Armele’s ruse in part by the wording of Atlantic’s power of attorney,[1] which con *259 veyed the impression that Armele was acting for Atlantic in the purchase of the Uruguayan bank, Banco La Caja Obrera (“BCO”). Moreover, Carbon asserted that Atlantic was aware of Armele’s actions through repeated questions by individuals and various governmental entities about the supposed purchase, but deliberately took no action to prevent the fraud which ultimately occurred.
According to Carbon, Armele told him that Atlantic intended to acquire 60% of BCO. At the time, ownership of the bank was held by the Uruguayan Central Bank. Enticed by the offer that in return for Carbon’s help in acquiring BCO, Carbon would be named BCO’s general manager, Carbon engaged in a number of loans and bond swaps to effectuate the deal. These machinations resulted in the creation of a pool of liquid assets with which Armele thereafter absconded. Atlantic maintained that Armele was merely “a client like many others” and that the bank should not be held liable for Armele’s actions.
Some evidence at trial, however, suggested a relationship between Armele and Atlantic’s Vice President, Jose Arredondo, including several cash transfers directly to Arredondo. Moreover, it came out at trial that Atlantic had issued a backdated second power of attorney. This second document was worded differently than the document Armele had shown Carbon. According to Carbon, Atlantic had created this second document as part of an attempt to cover up Atlantic’s potential liability for Armele’s actions.
At the close of Carbon’s case and after the denial of Atlantic’s motion for a directed verdict, Carbon sought leave of court to amend his complaint to seek punitive damages. The trial court denied this motion. The jury found Atlantic liable for fraud and negligent misrepresentation and awarded Carbon $335,555.16 as to each claim.[2] Upon return of the jury’s verdict, the trial judge stated that it was unclear whether the jury’s intention was to award $335,555.16 in total, or double that amount to $671,111.32. At that point, and with the approval of counsel for both sides, the judge sent a request back to the jurors, asking them to clarify their intention. The jurors indicated that they were awarding $671,111.32.
Atlantic appeals the amount of the final judgment entered, including the prejudgment interest awarded. Carbon appeals the denial of his motion to amend his complaint to add a claim for punitive damages. We affirm the rulings at issue and choose to address briefly several of the points raised.
As to Atlantic’s argument that the jury instructions as given were misleading, we disagree. The record demonstrates that both parties were allowed to fully argue Armele’s agency, including his “scope of authority,” and the instructions given adequately addressed this point. As to the claim that the damage awards for fraud and negligent misrepresentation are duplicative, what transpired in the instant case distinguishes it from the general rule cited by Atlantic. See Burton v. Linotype Co., 556 So.2d 1126 (Fla. 3d DCA 1989)(coneluding double recovery may not be derived from one element of damages); *260 Besett v. Basnett, 437 So.2d 172 (Fla. 2d DCA 1983)(double recovery on. both fraud and negligent misrepresentation prohibited). After consultation and agreement with counsel for both sides, the judge sent the case back for a clarification of the amount being awarded. Because Atlantic’s counsel agreed to this issue going back to the jury, the bank invited any error which occurred and cannot get the award reduced based on this claim. See Perry v. Allen, 720 So.2d 614 (Fla. 1st DCA 1998); Alamo Rent-A-Car, Inc. v. Clay, 686 So.2d 394, 395 (Fla. 3d DCA 1991). Furthermore, contrary to Atlantic’s argument that there was no support in the record for the amount awarded, as Carbon’s counsel pointed out, the award represented approximately 60% of the amount Carbon claimed he had lost as a result of the scam. The jury may have chosen that amount because Armele had told Carbon that Atlantic had intended to purchase 60% of BCO.
As to Atlantic’s claim that prejudgment interest was improperly ordered, again, we disagree. Here, the interest was for the loan that Carbon made and that he must now repay. This was the damage Carbon claimed. The interest was awarded from the date the loan was made. Thus, the harm suffered was a quantifiable amount from an identifiable date. See Rogers v. Mitzi, 584 So.2d 1092 (Fla. 5th DCA 1991). .
On cross appeal, we conclude that the trial court did not err in denying Carbon’s motion to amend his complaint to add the claim for punitive damages. The motion came at the conclusion of the presentation of Carbon’s case. Under the instant factual scenario, there was no justifiable reason for this motion coming mid trial. Section 768.72 Florida Statutes (1999)provides in part:
Pleading in civil actions; claim for punitive damages
(1) In any civil action, no claim for punitive damages shall be permitted unless there is a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages. The claimant may move to amend her or his complaint to assert a claim for punitive damages as allowed by the rules of civil procedure. The rules of civil procedure shall be liberally construed so as to allow the claimant discovery of evidence which appears reasonably calculated to lead to admissible evidence on the issue of punitive damages. No discovery of financial worth shall proceed until after the pleading concerning punitive damages is permitted.
The Florida Supreme Court has held that this section, although procedural in nature, creates a substantive legal right not to be subjected to punitive damage claims and the ensuing financial worth discovery until the trial court makes a determination that there is a reasonable evidentiary basis for recovery of such damages. See Simeon, Inc. v. Cox, 671 So.2d 158, 160 (Fla.1996); Globe Newspaper Co. v. King, 658 So.2d 518, 519 (Fla.1995).
As a result of the Supreme Court’s holding, the defendant has a right to assume that if it commences trial without punitive damages having been properly pled and an evidentiary basis having been made, it need not anticipate that it will be subjected .to a punitive damage claim. The right provided by section 768.72 has little meaning if defense counsel does not have the chance to design a strategy and employ tactics to its client’s advantage, in its defense against both compensatory and punitive damage claims. Although many cases are now bifurcated, the defendant should have the opportunity to plan how it will prepare a jury in opening argument and how it will organize its challenges to the plaintiffs introduction of evidence and testimony. From both an offensive and defensive posture, a defendant has the right to know the nature and extent of those claims.
*261 In this case, Carbon argues that his claim for punitive damages was made during trial because significant evidence he had sought from the bank was not produced until the weekend before trial. If that was the case, Carbon could have moved for a continuance of the trial and sought sanctions against the defendant bank. Moreover, it is undeniable that on the morning the trial was to begin, Carbon might have sought leave to file an amended complaint and buttressed his claim at that point with the evidence supporting a punitive damage claim in hand. It is not sufficient for Carbon to argue that the defendant bank would suffer no prejudice because the trial on punitive damages would be bifurcated. That flows from what we have already said.
It should be remembered that a claimant and its counsel have until the statute of limitations runs in which to plan its strategy and the tactics to be utilized against the targeted defendant. Nothing unique about this case justified depriving the defendant of the right provided by law to know in advance a punitive damage claim was being made, so it could plan its strategy to meet the plaintiffs evidence and present its own case. Absent unforeseeable circumstances not present here, we hold that plaintiff has the burden of pleading and proving the punitive damage claim in sufficient time in advance of trial to afford a defendant the opportunity he is now entitled to under section 768.72 and Simeon, Inc. v. Cox.
In sum, having considered the points raised in both the plenary appeal and the cross appeal, the orders under review are affirmed in all respects.

. Translated into English, the document at issue provided:
KNOW ALL MEN BY THESE PRESENTS that the company known as ATLANTIC SECURITY BANK, a banking institution duly organized and existing pursuant to the laws of the Cayman Islands, and registered in the Republic of Panama under record SE 000351, roll 14048, frame 0068 of the (Commercial) Microfilm Section of the Public Records, in its capacity as Trustee, and pursuant to the instructions received by the grantor of the Trust, confers special power of attorney in favor of Mr. Carlos Armele Arregui, a Paraguayan national, with Republic of Paraguay passport No. 7700, in order to acquire in its name and representation all or a portion of the shares of stock of Banco Caja Obrera of the Republic of Uruguay.
In order to formalize the acquisition the above special agent is hereby authorized to *259 perform any pertinent negotiations, execution of contracts, preliminary or final, as well as any other document relating to this transaction. The special agent is also authorized hereby to stipulate as to the price of the acquisition, to accept the shares of stock and to take care of their registration. This power of attorney shall be deemed effective and valid by any public or private institution where accreditation of this agency is required, until same is expressly revoked.
IN WITNESS WHEREOF, this document is executed in the City of Panama, Republic of Panama, on December 16, 1994.
BY: ATLANTIC SECURITY BANK

. Adder was the corporation Carbon used to effectuate the bond swaps which resulted in Carbon’s ultimate loss, however the corporation suffered no damages other than those claimed by Carbon.