846 So.2d 1264 (2003)
Eric REIMSNYDER, Appellant,
v.
SOUTHTRUST BANK, N.A. and Carroll Richardson, Appellees.
No. 4D01-4922.
District Court of Appeal of Florida, Fourth District.
June 11, 2003.
*1265 David P. Ackerman and Scott J. Link of Ackerman, Link & Sartory, P.A., West Palm Beach, for appellant.
John R. Eubanks, Jr. of Moyle, Flanigan, Katz, Raymond & Sheehan, P.A., West Palm Beach, for appellee Southtrust Bank, N.A.
Steven A. Mayans of FitzGerald, Hawkins, Mayans & Cook, P.A., West Palm Beach, for appellee Carroll Richardson.
WARNER, J.
The issue in this case involves the liability of a bank to a third party for providing a reference as to one of its account customers. The bank officer told the third party that its customer was a reputable company, which the third party contends was a misrepresentation. The third party invested in the company, and six months later the company was ultimately investigated for fraud by the Securities and Exchange Commission. The trial court granted summary judgment in favor of the bank. We affirm, holding that the bank had no duty of care to the third party in accordance with the Restatement (Second) of Torts, section 552.
A representative of International Capital Management, Inc. ("ICM"), solicited appellant, Eric Reimsnyder ("Reimsnyder"), a sophisticated stock investor, to invest in the company which traded in foreign currency. ICM provided Reimsnyder with a list of references, one of whom was Carroll Richardson ("Richardson"), branch manager of Southtrust Bank in Palm Beach where ICM had its accounts. Reimsnyder was not a customer of Southtrust. When Reimsnyder called Richardson regarding ICM, he spoke to her for about five to seven minutes. She told him the company was an account holder with very large deposits. When Reimsnyder asked her about the company, which he knew had only been in existence for about six months, Richardson said it was a safe, secure, and reputable company. Reimsnyder told her he was considering investing about $250,000 in ICM. She asked about his other investments, and he told her he invested in stocks. Richardson said that investing in ICM would be good because he would not be putting all of his "eggs in one basket." Reimsnyder testified that this was "friendly" advice and that he was not relying upon Richardson to provide investment advice.
According to Reimsnyder, because Richardson "legitimatized" ICM for him after his own review of the documents given to him by ICM, he decided to invest in the company in April of 1998. In September of 1998, the Securities and Exchange Commission filed a complaint against ICM for securities fraud. It froze all of ICM's assets and ICM consented to the appointment of a receiver. Reimsnyder only received about 19% of his investment back. Any further distribution is unlikely.
Reimsnyder sued Southtrust and Richardson for fraud, negligent misrepresentation, and breach of fiduciary duty. Southtrust and Richardson each moved for summary judgement as to all counts. They both claimed that Richardson did not owe a duty of care to Reimsnyder and that Richardson's statements were either true or only opinions, not facts, and could not form the basis of a misrepresentation claim. In support of her summary judgment motion, Richardson filed an affidavit attesting that ICM was the largest depositor at her branch, with an average daily balance of $295,660.84 and total deposits *1266 of $19 million over the nine months it maintained an account with Southtrust and its predecessor. Reimsnyder's deposition also was submitted in which he testified that Richardson told him ICM was reputable and had very large deposits. He admitted that he did not inquire as to what Richardson meant by "very large." He also testified that he believed she was acting in good faith and did not know of any fraud on behalf of ICM when she spoke to him.
In opposition to the motions for summary judgment, Reimsnyder argued Richardson had a duty under the Restatement (Second) of Torts, section 552, to provide him with information non-negligently. Reimsnyder also submitted the affidavit of a banker, who also was a former deputy banking commissioner for the State of Florida. He attested that had Richardson reviewed ICM's account activity and seen that all the monies deposited were withdrawn immediately, it should have raised suspicions about the company. He opined that Richardson violated Southtrust's policy to "know its customers" by understanding their banking practices.
The trial court entered summary judgment in favor of Southtrust and Richardson. The court found no legal duty between Southtrust and Reimsnyder, because Southtrust and Richardson were not parties to the underlying business transaction between Reimsnyder and ICM. It also determined that none of the statements attributed to Richardson were demonstrably false at the time she made them or, alternatively, her statements were merely opinions. Further, the court determined fraud could not be proven because there was no intent to deceive. Reimsnyder appeals only the entry of summary judgment as to the fraud and negligent misrepresentation counts.
Reimsnyder claims that despite the lack of privity between Southtrust and himself, Southtrust and Richardson are still liable for Richardson's negligent misrepresentations because she undertook to provide information to him in connection with his investment in ICM. He relies on the Restatement (Second) of Torts, section 552(1), which section provides:
One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
Our supreme court adopted this position on negligent misrepresentation in Gilchrist Timber Co. v. ITT Rayonier, Inc., 696 So.2d 334, 339 (Fla.1997). There, a purchaser of real estate sued a vendor for negligent misrepresentation regarding zoning restrictions on the property. The court held that the vendor could be liable for a misrepresentation or nondisclosure, even though it was unintentional. See id.
In Gilchrist, the parties were in privity based upon the contract of sale. The issue presented in this case is whether this rule applies where the defendant who supplied the erroneous information has no privity or pecuniary interest in the transaction. Comment c. to section 552 clarifies the pecuniary interest in the transaction and states in part:
The rule stated in Subsection (1) applies only when the defendant has a pecuniary interest in the transaction in which the information is given. If he has no pecuniary interest and the information is given purely gratuitously, he is *1267 under no duty to exercise reasonable care and competence in giving it.
(Emphasis added).
Comment d. further states:
The defendant's pecuniary interest in supplying the information will normally lie in a consideration paid to him for it or paid in a transaction in the course of and as a part of which it is supplied. It may, however, be of a more indirect character. Thus the officers of a corporation, although they receive no personal consideration for giving information concerning its affairs, may have a pecuniary interest in its transactions, since they stand to profit indirectly from them, and an agent who expects to receive a commission on a sale may have such an interest in it although he sells nothing.
The fact that the information is given in the course of the defendant's business, profession or employment is a sufficient indication that he has a pecuniary interest in it, even though he receives no consideration for it at the time. It is not, however, conclusive. But when one who is engaged in a business or profession steps entirely outside of it, as when an attorney gives a casual and offhand opinion on a point of law to a friend whom he meets on the street, or what is commonly called a "curbstone opinion," it is not to be regarded as given in the course of his business or profession; and since he has no other interest in it, it is considered purely gratuitous. The recipient of the information is not justified in expecting that his informant will exercise the care and skill that is necessary to insure a correct opinion and is only justified in expecting that the opinion will be an honest one.
Section 552 has been interpreted as limiting liability for the supply of false information to those entities that are in the business of supplying a particular type of information or those who have a pecuniary interest in the transaction to which the information pertains. See Geosearch, Inc. v. Howell Petroleum Corp., 819 F.2d 521, 524 (5th Cir.1987); Cont'l Leavitt Communications, Ltd. v. PaineWebber, Inc., 857 F.Supp. 1266, 1270-71 (N.D.Ill.1994) (finding brokerage house that maintained research department with sole function of providing brokers with information to pass on to clients was in business of supplying information). However, when the information supplied is "gratuitous," no liability attaches because "the user of the information is not justified in expecting the supplier to have used due care in given [sic] the information." Cont'l Leavitt, 857 F.Supp. at 1270 (citing Restatement (Second) of Torts § 552, comment d. (1977)). The supplier is only charged with the obligation to "speak in good faith and without consciousness of a lack of any basis for belief in the truth or accuracy of what he says." § 552, cmt. a. In other words, the standard is one of honesty. § 552 comment d.
Southtrust and Richardson were not in the business of supplying information regarding the financial health of companies. A bank may have information regarding the size of deposits and the creditworthiness of its customers based upon their dealings with the bank, but there is neither evidence, nor did Reimsnyder allege, that Southtrust's business included the dissemination of information regarding the intricacies of its customers' particular businesses. While Reimsnyder's expert testified that a bank has an obligation to know its customers, such knowledge is for the purpose of serving the customers and protecting the bank and not for the purpose of disseminating information to third parties.
Further, neither Southtrust nor Richardson had any pecuniary interest in the transaction between Reimsnyder and ICM. *1268 The bank did not receive any compensation, nor was there any evidence of even an indirect pecuniary interest on behalf of the bank or Richardson, such as a loan between ICM and the bank which would have been paid off with the proceeds of the investment. In short, Richardson's information was given gratuitously to a person inquiring about a bank customer, not because there was any pecuniary interest in the transaction.
The cases cited by Reimsnyder are all distinguishable from the present facts. In Community Bank, Lake Oswego, Oregon v. Bank of Hallandale & Trust Co., 482 F.2d 1124, 1125-26 (5th Cir.1973), an Oregon bank contacted a Florida bank regarding a customer of the latter, indicating that it intended to make a loan to the customer of $50,000. The Florida bank official told the Oregon bank that the customer was a good one, with a seven figure trust account at the bank, and the Florida official offered to set aside securities held by the bank as collateral for the Oregon bank loan. This information was false because the customer had closed his account at the Florida bank. Nevertheless, after a couple of contacts and a letter of instruction from the Oregon bank to the Florida bank regarding the collateralization of the loan, and agreement by the Florida official, the Oregon bank disbursed the funds to the customer and consequently suffered a loss. As the facts clearly demonstrate, actual fraud occurred in this transaction, not negligent misrepresentation. Where actual fraud is present, there is no policy reason to limit the liability of the maker of the statement, "for no interest of society is served by promoting the flow of information not genuinely believed by its maker to be true." § 552 cmt. a.
Likewise, Lehigh Valley Trust Co. v. Central National Bank of Jacksonville, 409 F.2d 989, 993-94 (5th Cir.1969), involved actual fraud by the bank which supplied information. In addition, the bank had a pecuniary interest in the transaction in which the information was supplied. See id. at 991. Similarly, although the facts are not fully set forth in Atlantic Security Bank v. Adiler, 760 So.2d 258 (Fla. 3d DCA 2000), the recovery was based upon fraud, and it appears the bank also had a pecuniary interest in the transaction that was the subject of the information.
In Central States Stamping Co. v. Terminal Equipment Co., 727 F.2d 1405, 1409 (6th Cir.1984), the court, citing to Restatement (Second) of Torts, section 551 as support, held a bank liable for representations it made regarding the financial condition of one of its customers. A third party, Central States, was seeking to purchase machines made by the bank's customer, Terminal Equipment. Prior to the purchase, Central States requested information regarding Terminal's financial capabilities, and Terminal referred Central States to the bank. The bank informed Central States that Terminal was maintaining a satisfactory credit relationship with the bank and was trustworthy. In fact, Terminal was seriously indebted to the bank which had assumed a supervisory role over Terminal's day to day management. Based upon the bank's assurances, Central States went ahead with the purchase and paid a $50,000 deposit. Terminal never produced the machines, nor refunded the deposit. Instead, part of the money went to pay back the bank for previous loans. The court acknowledged that while the bank may not have had a duty to speak, once it decided to do so, it had the duty to disclose information in its possession which would reasonably be considered material to the contemplated transaction. See id. at 1409. However, the court qualified this duty, stating, "[t]he duty is particularly clear when the party *1269 answering the inquiry benefits directly from the actions of the inquiring party. Here the Bank was able to apply $30,000 to its debts which Central States asserts it never would have paid if it had known Terminal's true financial position." Id. Because the bank had a pecuniary interest, Restatement section 552 would apply to it.
In Barnett Bank of West Florida v. Hooper, 498 So.2d 923 (Fla.1986), our supreme court considered a bank's duty in connection with its involvement in transactions with its customers. There, Hooper, a customer of the bank, was told by a loan officer that Hosner Investments, another bank customer, was financially sound and had passed Internal Revenue Service reviews. That prompted Hooper to borrow $90,000 from the bank and invest it with Hosner. At the time, the bank knew that Hosner was involved in a check kiting scheme and that its account at the bank was substantially overdrawn. When Hosner deposited Hooper's investment, the bank applied it to the overdrafts and zeroed out Hosner's account. Hooper sued the bank for fraud and breach of fiduciary duty. The supreme court held,
[W]here a bank becomes involved in a transaction with a customer with whom it has established a relationship of trust and confidence, and it is a transaction from which the bank is likely to benefit at the customer's expense, the bank may be found to have assumed a duty to disclose facts material to the transaction, peculiarly within its knowledge, and not otherwise available to the customer.
Id. at 925. Thus, the supreme court based the bank's liability, even to its own customer, on the bank's pecuniary interest in the transaction.
Some courts have applied a limited exception to this rule and held banks liable for negligent misrepresentation of factual information regarding a customer's creditworthiness. For instance, in Berkline Corp. v. Bank of Mississippi, 453 So.2d 699, 702 (Miss.1984), the court held that:
Where a bank, through one of its duly authorized officers or agents, undertakes to supply credit information, arguably gratuitously, the bank and its officers are bound to use the skill and expertise which they hold themselves out to the public as possessing. There is ordinarily no reason why factual information given by the bank should not be accurate. When a bank officer makes representations or omissions of material facts false at the time, and where that officer has not exercised reasonable care and diligence to see that the information dispensed is accurate, the bank may incur a liability.
In that case, the bank officer significantly misstated the credit history of the bank's customer to an inquiring business. The business agreed to make a sale on credit to the customer and consequently lost approximately $10,000 in merchandise when the customer failed to pay. The court held that the bank may be liable for material misrepresentations of fact. See id. at 702; also M.S.A. § Tubular Prod., Inc. v. First Bank & Trust Co., 869 F.2d 1422, 1424 (10th Cir.1989) (holding representations from a bank that a check of $95,000 from bank's customer would be honored when customer usually had less than $10,000 on deposit, was actionable); Nevada Nat'l Bank v. Gold Star Meat Co., 89 Nev. 427, 514 P.2d 651, 654 (1973) (holding a bank officer who informed a third party that it would be safe to extend $8,000 credit to bank customer, although customer did not have an open account at the bank, could be held liable for the material misrepresentation).
*1270 Florida applied this rule in Forbes v. Auerbach, 56 So.2d 895, 900 (Fla.1952). The supreme court noted that:
[R]ecovery may be had for misrepresentation as to a third party's financial condition where a person, for the purpose of inducing another to lend money or sell goods or other chattels on credit to said third person by misrepresenting the financial responsibilities of such third person or by misrepresenting the solvency or financial responsibility of such third person.
(Citations omitted). However, in Auerbach, as in the other cases, the misrepresentations were clearly fraudulent. Moreover, they were misrepresentations as to specific past facts, which the bank officer knew were false.
In this case, the bank was not called upon to make a specific representation regarding ICM's creditworthiness on a particular transaction, and Richardson made no such statements. The bank had no pecuniary interest in the transaction between Reimsnyder and ICM and no evidence of actual fraud was presented. Thus, the information was gratuitously supplied, and the bank and Richardson cannot be held liable. As Reimsnyder himself testified, Richardson acted in good faith. Therefore, we conclude that summary judgment was properly rendered.
Because there was no evidence of fraudulent misrepresentations, the court was also correct in granting summary judgment on the fraud count.
Affirmed.
SHAHOOD and TAYLOR, JJ., concur.