GROSS, J.
 

 When does a negligent misrepresentation cross the line from a gratuitous, curbstone opinion, which cannot support a cause of action in tort, to a statement in which the speaker has a sufficient pecuniary interest to justify the imposition of tort liability? Here, where the defendants were in the business of appraising sports memorabilia, we find that they had an adequate pecuniary interest in the transaction where the misinformation was supplied. We thus reverse the final order dismissing the plaintiffs complaint.
 

 This is an appeal of a final order granting a motion to dismiss for failure to state a cause of action. Fla. R. Civ. P. 1.140(b)(6). In reviewing an order granting a rule 1.140(b)(6) motion to dismiss, this court’s “gaze is limited to the four corners of the complaint.”
 
 Gladstone v. Smith,
 
 729 So.2d 1002, 1003 (Fla. 4th DCA 1999). “The facts alleged in the complaint must be accepted as true ... [and a]ll reasonable inferences must be drawn in favor of the pleader.”
 
 Id.
 
 (citations omitted).
 

 Blumstein’s second amended complaint told this story. In October 2006, Athanas-ios Karahalios approached Jeffrey Phillips for a $203,000 loan. As collateral, Kara-halios offered a collection of baseball memorabilia. Before Phillips would make the loan, he required that the collection be appraised as having a value of at least $300,000. That same month, Phillips, Kar-ahalios, and appellant Blumstein, an associate of Phillips,
 
 [1]
 
 travelled to Sports Im
 
 *439
 
 mortals’ place of business on Federal Highway in order to have the memorabilia “appraised.”
 

 As the representative of Sports Immortals, Joel Platt met with the group. Sports Immortals and Joel Platt held themselves out “as experts at authenticating and appraising sports memorabilia.” The group disclosed to Platt “that the appraisal was being done for the specific purpose of Phillips relying on it to make a loan against the memorabilia.” Accordingly, both Sports Immortals and Platt “knew” that Phillips was relying upon the appraisal/evaluation to make a loan to Kar-ahalios.
 

 Shortly thereafter, “Platt issued an appraisal/evaluation, indicating that the memorabilia was worth between $350,000.00 and $400,000.00.” Attached to the complaint as an exhibit, this document lists its “subject” as the “Evaluation of Hall of Fame Baseball Montage of the original inductees in Baseball’s Hall of Fame.” The document described the piece to be evaluated:
 

 We have examined a beautiful 58 x 43 montage of the first inductees in the Baseball Hall of Fame. The assemblage contains photos, baseball cards and signatures of Babe Ruth, Grover Alexander, Connie Mack, Tris Speaker, George Sisler, Walter Johnson, Ty Cobb, Nap Lajoie, Honus Wagner, Cy Young
 
 &
 
 Eddie Collins.
 

 This was the “evaluation”:
 

 The subject matter is a unique one of a kind baseball montage that could not be duplicated. If sold at auction we would estimate a possible sales price between $350,000.00 and $400,000.00.
 

 The evaluation was prepared on Sports Immortals’ letterhead. It listed Platt as the “Founder & President” of “Sports Immortals Museum.” The evaluation was done for Karahalios, whose name and address was listed at the top. The evaluation contained the notation that it had “been performed while the subject matter was enclosed in a shadowbox frame.”
 

 Phillips made the loan to Karahalios, who defaulted on it in October 2007. At that time, “Phillips met with another appraiser to ascertain the current value of the memorabilia with the intent [of] selling the memorabilia to recoup his money.” This second appraiser told Phillips that the Sports Immortals valuation was incorrect because the autographs on the montage “were not authentic.”
 

 Phillips returned to Sports Immortals and Platt for a reevaluation in February 2009. After reexamining the collection, Platt issued an “Evaluation Report” that discussed the autograph montage: “Spoke with autograph authenticator for Lelands Auction House and upon reviewing the scan, felt the signatures were not authentic and would not place the item in their auction.” Platt assigned no value to the montage, but offered to buy other items for $2,750.
 

 Based on the above facts, Blumstein alleged that both Sports Immortals and Platt owed Phillips a duty of care to conduct the appraisal/evaluation in a reasonable manner consistent with the requirements of a “memorabilia appraiser/evaluator/authenticator in the community.” Blumstein further alleged that the defendants failed to meet that standard of care when it issued the original appraisal and that this negligence was a direct and proximate cause of the damages at issue.
 

 The circuit court dismissed the second amended complaint without explanation. We agree with Blumstein that the complaint stated a claim for negligent misrepresentation.
 

 
 *440
 
 In
 
 Gilchrist Timber Co. v. ITT Rayonier, Inc.,
 
 696 So.2d 334 (Fla.1997), the Supreme Court adopted the Restatement (Second) of Torts, section 552(1), to describe the elements of the cause of action:
 

 § 552. Information Negligently Supplied for the Guidance of Others.
 

 (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
 

 (2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
 

 (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
 

 (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.
 

 Id.
 
 at 337-39 (quoting Restatement (Second) of Torts § 552 (1977)).
 

 Crucial to this case is whether the deficient valuation was supplied “in the course of [the defendants’] business, profession or employment, or in any other transaction in which [they had] a pecuniary interest.” Two comments to section 552 explain the importance of the context in which a negligent misrepresentation is made. Comment c describes the necessity of a pecuniary interest in triggering a legal duty:
 

 The rule stated in Subsection (1) applies only when the defendant has a pecuniary interest in the transaction in which the information is given. If he has no pecuniary interest and the information is given purely gratuitously, he is under no duty to exercise reasonable care and competence in giving it.
 

 Restatement (Second) of Torts § 552 cmt. c. Comment d further describes the type of pecuniary interest necessary to support a cause of action for negligent misrepresentation:
 

 The defendant’s pecuniary interest in supplying the information will normally lie in a consideration paid to him for it or paid in a transaction in the course of and as a part of which it is supplied. It may, however, be of a more indirect character. Thus the officers of a corporation, although they receive no personal consideration for giving information concerning its affairs, may have a pecuniary interest in its transactions, since they stand to profit indirectly from them, and an agent who expects to receive a commission on a sale may have such an interest in it although he sells nothing.
 

 The fact that the infomation is given in the course of the defendant’s business, -profession or employment is a sufficient indication that he has a pecunianj interest in it, even though he receives no consideration for it at the time. It is not, however, conclusive.
 
 But when one who is engaged in a business or profession steps entirely outside of it, as when an attorney gives a casual and offhand opinion on a point of law to a friend whom he meets on the street, or what is commonly called a “curbstone opinion,” it is not to be regarded as given in the course of his business or profession; and since he has no other interest in it, it is considered purely gratuitous. The recipient of the information is not justified in expecting that his informant will exercise the care and skill that is necessary
 
 *441
 
 to insure a correct opinion and is only-justified in expecting that the opinion will be an honest one.
 

 Id.
 
 § 552 cmt. d (emphasis added).
 

 Thus, “the central principle operating within section 552 is that the defendant supplier of information must have a pecuniary interest in the transaction or context in which the information is supplied in order to merit the imposition of a duty of care in obtaining and communicating the information.”
 
 State by Bronster v. U.S. Steel Corp.,
 
 82 Hawai’i 32, 919 P.2d 294, 308 (1996). In
 
 Reimsnyder v. Southtrust Bank, N.A.,
 
 846 So.2d 1264, 1267 (Fla. 4th DCA 2003) (citations omitted), we observed that “[s]ection 552 has been interpreted as limiting liability for the supply of false information to those entities that are in the business of supplying a particular type of information.”
 
 [2]
 
 One who is in the business of supplying a certain type of information may have the requisite pecuniary interest, even though no consideration is paid for the opinion.
 
 See
 
 Restatement (Second) of Torts § 552 cmt. d. This pecuniary interest requirement for an actionable negligent misrepresentation contrasts with a “purely gratuitous” “curbstone opinion”; the recipient of such information could not reasonably rely on it because he should not expect the person making the statement to exercise the diligence and care in formulating it that would justify reliance. Where, however,
 

 the information is given in the capacity of one in the business of supplying such information, that care and diligence should be exercised which is compatible with the particular business or profession involved. Those who deal with such persons do so because of the advantages which they expect to derive from this special competence. The law, therefore, may well predicate on such a relationship, the duty of care to insure the accuracy and validity of the information.
 

 1 F. Harper
 
 &
 
 F. James,
 
 The Law of Torts
 
 § 7.6 (1956).
 

 As pleaded, the complaint satisfies the elements of a section 552 negligent misrepresentation. The defendants were in the business of authenticating, appraising, buying, and selling sports memorabilia. Seeking out their expertise, Phillips went to their place of business to secure their opinion. He disclosed that he sought the valuation so he could decide whether to make a loan, with the autograph montage as security. The defendants produced the first evaluation in the course of their business. Even though they were not paid for
 
 *442
 
 their opinion at the time, the defendants had a sufficient, indirect pecuniary interest in their dealings with Phillips to justify the imposition of liability; as was evidenced in the February 2009 report, appellees saw Phillips as a potential source of future business. Under these circumstances, Phillips could reasonably rely upon the defendants’ evaluation and the law placed upon them a duty of reasonable care to insure the accuracy and validity of the information they provided.
 

 We distinguish this case from
 
 Reimsnyder,
 
 a case where we held that no negligent misrepresentation cause of action existed. In that case, a defendant had no pecuniary interest in either the transaction or the context in which the information was supplied; the plaintiff had sought to impose liability on the defendant bank for a five to seven minute telephone conversation the plaintiff had with a branch manager about a company that had its accounts at the bank.
 
 Reimsnyder,
 
 846 So.2d at 1265. The branch manager told the plaintiff that the company “was an account holder with very large deposits” and that “it was a safe, secure, and reputable company.”
 
 Id.
 
 The plaintiff invested in the company and lost money.
 
 Id.
 
 We affirmed a summary final judgment in favor of the bank, explaining two reasons for the decision. First, the bank and its branch manager “were not in the business of supplying information regarding the financial health of companies.”
 
 Id.
 
 at 1267. Second, neither the bank nor the branch manager “had any pecuniary interest in the transaction between” the plaintiff and the company that was the subject of the plaintiffs inquiries.
 
 Id.
 
 at 1267-68. The questionable information was “given gratuitously to a person inquiring about a bank customer.”
 
 Id.
 
 at 1268.
 

 Unlike the bank in
 
 Reimsnyder,
 
 the ap-pellees in this case had a sufficient pecuniary interest in their dealings with Phillips to support a negligent misrepresentation cause of action. They were in the business of appraising sports memorabilia and Phillips travelled to their place of business to obtain an opinion, after fully disclosing the reason for the inquiry. The 2006 transaction was an opportunity for appellees to establish a relationship with Phillips that might have led to future business.
 

 Reversed and remanded.
 

 STEVENSON, J., and STREITFELD, JEFFREY E., Associate Judge, concur.
 

 [1]
 

 . Blumstein later acquired Phillips’s claim against Sports Immortals and Platt by way of assignment.
 

 [2]
 

 . New York has gone a step further and narrowed the tort of negligent misrepresentation by requiring the existence of a "special relationship” between the person making the negligent statement and the plaintiff; such "[a] special relationship may be established by ‘persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified.' ”
 
 Mandarin Trading Ltd.
 
 v.
 
 Wildenstein,
 
 16 N.Y.3d 173, 919 N.Y.S.2d 465, 944 N.E.2d 1104, 1109 (2011) (quoting
 
 Kimmell v. Schaefer,
 
 89 N.Y.2d 257, 652 N.Y.S.2d 715, 675 N.E.2d 450 (1996));
 
 see also Ravenna v. Christie's Inc.,
 
 289 A.D.2d 15, 734 N.Y.S.2d 21 (N.Y.App.Div.2001) (holding that a complaint for negligent misrepresentation, alleging that an auction house’s specialist in Old Master Paintings gave erroneous information about a work of art, was properly dismissed because the complaint showed only a "walk-in inquiry” and failed to "suggest the existence of a special relationship between the parties”). The New York approach to negligent misrepresentation seeks to separate casual statements in commercial transactions from those types of statements for which liability should properly be imposed.
 
 Kimmell,
 
 652 N.Y.S.2d 715, 675 N.E.2d at 454;
 
 see also Sain v. Cedar Rapids Comm. Sch. Dist.,
 
 626 N.W.2d 115, 124 (Iowa 2001) (stating that a duty under the section arises "only when the information is provided by persons in the business or profession of supplying information to others”).