IN RE: PALM BEACH FINANCE PARTNERS, L.P. and Palm Beach Finance II, L.P., Debtors.

Barry Mukamal, Plaintiff,

v.

General Electric Capital Corporation, Defendant.

CASE NO.: 09–36379–BKC–PGH

ADV. NO.: 12–01979–BKC–PGH–A

United States Bankruptcy Court, S.D. Florida, West Palm Beach Division

Signed August 23, 2013

Michael S. Budwick, Esq., Meland Russin & Budwick, PA, Solomon B. Genet, Esq., David S. Mandel, Esq., Miami, FL, for Plaintiff.

Sean M. Berkowitz, David S. Foster, Chicago, IL, Patricia A. Redmond, Miami, FL, for Defendant.

CHAPTER 11
*ORDER GRANTING IN PART AND DENYING IN PART GECC'S MOTION TO DISMISS (ECF NO. 32)*

Paul G. Hyman, Chief Judge

**THIS MATTER** came before the Court upon the *Motion to Dismiss* (the "Motion to Dismiss") (ECF No. 32) filed by General Electric Capital Corporation ("GECC"). The Motion to Dismiss seeks dismissal of the *Amended Complaint* (ECF No. 26)

filed by Barry Mukamal (the "Plaintiff") in his capacity as Liquidating Trustee for the Palm Beach Finance Liquidating Trust and the Palm Beach Finance II Liquidating Trust. For the reasons discussed below, the Court grants in part and denies in part GECC's Motion to Dismiss and dismisses Counts 2 through 9 of the Amended Complaint without prejudice.

### COMPLAINT ALLEGATIONS AND PROCEDURAL BACKGROUND

The following is a summary of the relevant allegations contained in the Amended Complaint. Thomas Petters ("Petters") and his co-conspirators conspired to commit and actually did commit the third-largest financial fraud in U.S. history (the "Petters Ponzi Scheme"). GECC is one of the most sophisticated commercial lenders in the word, who at all material times through July 2, 2001, was chartered under the New York State Banking Law and subject to supervision by the State of New York banking authority. Palm Beach Finance Partners, L.P. ("PBF I") and Palm Beach Finance II, L.P. ("PBF II" and together with PBF I, the "Palm Beach Funds") were Delaware limited partnerships which were formed in 2002 and 2004, respectively, to provide financing to Petters and his affiliates. In order to facilitate these financing activities, the Palm Beach Funds formed PBFP Holdings, LLC ("PBFP Holdings").

By 1995, Petters began soliciting "investments" for his scheme. In soliciting investments, Petters represented to investors that the funds invested would be used to finance consumer electronic merchandise transactions. Petters claimed he would arrange for the sale and delivery of the consumer electronic merchandise from suppliers to "big box" retailers, such as Costco and Sam's Club. The financing would allow Petters to pay the suppliers while he awaited payment from retailers. However, unbeknownst to his investors, Petters' operation was nothing more than a Ponzi scheme—there were no true retailers, there was virtually no merchandise, the suppliers were co-conspirators, and the lenders were repaid from monies sourced from other defrauded lenders.

In 1997, Petters began to communicate with GECC about providing financing for his purchase financing operation. By 1998, GECC and Petters agreed that Petters Capital (a special purpose entity or "SPE") would be formed to borrow $50 million on a revolving basis from GECC. According to the terms of the loan agreement, (1) the funds advanced would be used to purchase the consumer electronic merchandise, (2) GECC would be repaid from the sale of the merchandise, (3) retailers would be required to make their payments directly to a GECC-controlled lockbox, and (4) GECC would receive various forms of compensation, including interest and profit sharing "success fees." On March 10, 1998, GECC filed a UCC–1 financing statement ("GECC Financing Statement") with the Minnesota Secretary of State in order to perfect its security interest in the assets of Petters Capital. In 1999, GECC provided another line of credit to a Petters-controlled entity—a $ 55 million line of credit to RedtagBiz, Inc., f/k/a Redtagoutlet.com, Inc. ("Redtag").

Over time, GECC and Petters developed an unusually close relationship, evidenced in part by (1) the profit sharing "success fees" arrangement, (2) the issuance on January 4, 2000, of GECC's recommendation letter praising Petters in his personal and business capacities (the "Recommendation Letter"), (3) GECC's overlooking of Petters' noncompliance with the terms of the loan agreement, (4) GECC's deviation from its standard procedures, and (5) the

close relationship between Petters and Richard Menczynski (an Assistant Vice President with GECC who later left GECC to become RedTag's Vice President of Finance). In particular, the Recommendation Letter was an extraordinary departure from the typical "reference letter" issued by GECC to a borrower's specific vendor. The Recommendation Letter described Petters Capital as an "excellent customer"—a status which was exclusive to and created for Petters Capital. It also contained the atypical and extraordinary statement that on a personal level, Petters was "of high character and possess[ed] strong moral values." Finally, the Recommendation Letter was not addressed to a specific individual or company, but rather was addressed "To whom it may concern," indicating an understanding on the part of GECC that the Recommendation Letter would be distributed to multiple individuals.

In late 2000, GECC uncovered the fraudulent nature of the Petters Ponzi Scheme, including that Petters and his co-conspirators were engaged in a conspiracy to defraud their lenders. This discovery resulted in part from GECC's direct communication with Costco, one of Petters' supposed retailers, during which Costco stated that it had not entered into any purchase orders with Petters as Petters had represented. Upon making this discovery, GECC agreed to keep silent and not disclose its knowledge of the Petters Ponzi Scheme to anyone outside of GECC. Instead, GECC elected to accept a payoff from Petters of the revolving credit line, including payment of the "success fees," and to otherwise join, encourage, aid, abet, facilitate, and substantially assist Petters' conspiracy.

In 2002, the Palm Beach Funds became involved with Petters through Frank Vennes ("Vennes"). Petters, acting through Vennes, used his former relationship with GECC as a selling point to entice the Palm Beach Funds to become lenders/investors in Petters' purchase financing operations. Additionally, Vennes, who was familiar with and influenced by GECC's Recommendation Letter, gave his own positive recommendation of Petters to the Palm Beach Funds. The Palm Beach Funds eventually agreed to become lenders to Petters and filed a UCC–1 financing statement in the Minnesota public records to ensure its position as first lienholder in the collateral it financed. Upon inspection of the public records, the Palm Beach Funds discovered that the GECC Financing Statement was still in effect. Accordingly, the Palm Beach Funds requested the GECC Financing Statement be terminated. Petters, in turn, asked GECC to terminate its Financing Statement. GECC agreed and appointed Petters Capital as its agent to terminate the GECC Financing Statement. Petters, through Petters Capital, filed a UCC–3 financing statement termination ("GECC Termination Statement") on March 5, 2003. The Palm Beach Funds then went ahead with its loans to Petters.

Upon the implosion of the Petters Ponzi Scheme in September 2008, the Palm Beach Funds suffered damages in excess of $1 billion and eventually filed for chapter 11 bankruptcy protection on November 30, 2009. On September 3, 2010, the Plaintiff, as the Palm Beach Funds' Chapter 11 Trustee, filed a *Second Amended Joint Plan of Liquidation*[1] (the "Plan of Liquidation"), which the Court confirmed on October 21, 2010, in the *Order Confirming the Joint Plan of Liquidation*[2] (the

---

1. The Plan of Liquidation can be found at ECF No. 245 in Case No. 09–36379–PGH.

2. The Confirmation Order can be found at ECF No. 444 in Case No. 09–36379–PGH.

"Confirmation Order"). Subsequently on September 29, 2012, the Plaintiff filed the instant adversary proceeding against GECC, seeking recovery on nine counts: (1) civil conspiracy to commit fraud, (2) aiding and abetting fraud, (3) fraud by omission, (4) fraudulent misrepresentation, (5) fraudulent concealment, (6) conspiracy to commit fraudulent concealment, (7) negligent misrepresentation, (8) fraud, and (9) negligence. In response, GECC filed the Motion to Dismiss now before the Court.

## CONCLUSIONS OF LAW

### I. *Motion to dismiss standard*

### A. General pleading standard—Rules 8(a) and 12(b)(6)

In order to state a claim for relief under Federal Rule of Civil Procedure 8(a) [3] and thus survive a Rule 12(b)(6) [4] motion to dismiss, the factual allegations of the Plaintiff's Amended Complaint must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). In determining facial plausibility, a court should not assume the veracity of mere legal conclusions or threadbare recitals of the elements of a cause of action. *Id.* at 679, 129 S.Ct. 1937. However, when "there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 664, 129 S.Ct. 1937. If a plaintiff's allegations do "not nudge[ ] their claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955.

### B. Pleading special matters—Rule 9(b)

When a plaintiff asserts claims based upon fraud or mistake, simply meeting the pleading requirements of Rule 8(a) is insufficient to survive a Rule 12(b)(6) motion to dismiss. In addition, Federal Rule of Civil Procedure 9(b) [5] requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Rule 9(b) "serves an important purpose in fraud actions by alerting defendants to the 'precise misconduct with which they are charged' and protecting defendants 'against spurious charges of immoral and fraudulent behavior.'" *Durham v. Bus. Mgmt. Assoc.*, 847 F.2d 1505, 1511 (11th Cir.1988) (*quoting Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir.1984), *cert. denied*, 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985)). The Eleventh Circuit Court of Appeals held:

Rule 9(b) is satisfied if the complaint sets forth "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the man-

---

**3.** Federal Rule of Civil Procedure 8(a) is made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7008.

**4.** Federal Rule of Civil Procedure 12(b)(6) is made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7012.

**5.** Federal Rule of Civil Procedure 9(b) is made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7009

ner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud."

*Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir.2008) (*quoting Tello v. Dean Witter Reynolds, Inc.*, 494 F.3d 956, 972 (11th Cir.2007)). However, "Rule 9(b) does not require a plaintiff to allege specific facts related to the defendant's state of mind." *Id.* "[M]alice, intent, knowledge, and other conditions of a person's mind" may be pled generally. Fed.R.Civ.P. 9(b).

■ "In construing allegations of actual fraud in an action brought by a bankruptcy trustee, the 'particularity' standard of ... Rule 9(b) is somewhat relaxed." *Cox v. Grube (In re Grube)*, Adv. No. 10–8055, 2013 WL 343459, at *9 (Bankr.C.D.Ill. Jan. 29, 2013) (*citing Zazzali v. AFA Fin. Grp., LLC (In re DBSI, Inc.)*, 477 B.R. 504 (Bankr.D.Del.2012)); *see also, Ivey v. First–Citizens Bank and Trust Co. (In re Whitley)*, Adv. No. 12–02028, 2013 WL 486782, at *13 (Bankr.M.D.N.C. Feb. 7, 2013); *Wiand v. EFG Bank*, No. 8:10–CV–241–T–17MAP, 2012 WL 750447, at *6 (M.D.Fla. Feb. 8, 2012); *Tolz v. U.S. (In re Brandon Overseas, Inc.)*, Adv. No. 09–01971–RBR, 2010 WL 2812944, at *5 (Bankr.S.D.Fla. July 16, 2010). Thus, when a trustee brings a claim for fraud, Rule 9(b)'s particularity requirement is met " 'if the person charged with fraud will have a reasonable opportunity to answer the complaint and has adequate informa-tion to frame a response ... or if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations.' " *In re Brandon Overseas*, 2010 WL 2812944, at *5 (*quoting Kapila v. Arnel (In re Arizen Homes)*, Adv. No. 08–01639–RBR, 2009 WL 393863, at *2 (Bankr.S.D.Fla. Jan. 22, 2009)).

■ "Such flexibility afforded to trustees in bankruptcy with respect to the pleading requirements is [usually] appropriate '[g]iven the inevitable lack of knowledge concerning the acts of fraud previously committed against the debtor, a third party.' " *In re Arizen Homes*, 2009 WL 393863, at *2. However, when a trustee does not suffer from this lack of knowledge, the need to relax Rule 9(b)'s heightened pleading requirements does not exist. In such cases, the trustee will be held to the usual Rule 9(b) standard. *See Roberts v. Balasco (In re Ernie Haire Ford, Inc.)*, 459 B.R. 824, 837 (Bankr.M.D.Fla.2011).

■ Here, the following claims asserted by the Plaintiff are subject to the pleading requirements of Rule 9(b): (1) civil conspiracy to commit fraud, (2) aiding and abetting fraud, (3) fraud by omission, (4) fraudulent misrepresentation, (5) fraudulent concealment, (6) conspiracy to commit fraudulent concealment, (7) negligent misrepresentation,[6] and (8) fraud. Count

---

**6.** "Courts ... have reached varying conclusions regarding whether Rule 9(b) applies to negligent misrepresentation claims." *Pruco Life Ins. Co. v. Brasner*, No. 10–80804–CIV, 2011 WL 2669651, at *4 (S.D.Fla. July 7, 2011) (*citing Atwater v. Nat'l Football League Players Ass'n*, No. 1:06–CV–1510–JEC, 2007 WL 1020848, at *13 (N.D.Ga. Mar. 29, 2007)). In Florida and in Minnesota, courts have often applied Rule 9(b) to claims of negligent misrepresentation because historically, "negligent misrepresentation sounds in fraud rather than negligence." *Id.* (*quoting Souran v. Travelers Ins. Co.*, 982 F.2d 1497, 1511 (11th Cir.1993) (collecting opinions which have applied Rule 9(b) to negligent misrepresentation)); *see also, McGregor v. Uponor, Inc.*, Civil No. 09–1136 ADM/JJK, 2010 WL 55985, at *3 (D.Minn. Jan. 4, 2010) (noting that "Minnesota law holds that allegations of misrepresentation, whether styled as intentional misrepresentation or negligent misrepresentation, sound in fraud and therefore must satisfy the pleading requirements of Rule 9(b)"). In Illinois, courts generally decline to apply Rule 9(b)'s pleading standard to claims of negligent misrepresentation. *Chi. Materials*

9, the Plaintiff's claim for negligence, need only meet the pleading requirements of Rule 8(a).

## II. *Statute of limitations*

GECC contends that the Plaintiff's claims are untimely because the very last GECC act alleged in the Amended Complaint as a basis for the Plaintiff's claims is the March 2003 filing of the GECC Termination Statement. Thus, according to GECC, the statute of limitations on the Plaintiff's claims expired at the latest in March 2007 (using Florida's four-year statute of limitations)[7] or in March 2008 (using Illinois' five-year statute of limitations).[8] The Plaintiff disagrees and contends that a choice of law analysis is not appropriate at this stage and that the Court must deny GECC's Motion to Dismiss if the Amended Complaint properly alleges a claim under *any* potentially applicable state law. By that standard, the Plaintiff contends that he properly alleges a cause of action under Minnesota law and that under Minnesota law, the six-year statute of limitations, which is subject to the "discovery rule," has not expired. The Court agrees with the Plaintiff.

To begin with, the statute of limitations defense is an affirmative defense upon which GECC, as the defendant, bears the burden of pleading and proving. *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir.2004); *see also, Lindley v. City of Birmingham, Ala.*, No. 12–15073, 2013 WL 1336609, at *2 (11th Cir. Apr. 3, 2013); *Steinberg v. A Analyst Ltd.*, No. 04–60898, 2009 WL 806780, at *8 (S.D.Fla. Mar. 26, 2009); *Cantonis v. Stryker Corp.*, Civ. No. 09–3509 (JRT/JJK), 2010 WL 6239354, at *5 (D.Minn. Nov. 23, 2010). This means that the Plaintiff is not required to affirmatively plead around the statute of limitations defense. *La Grasta*, 358 F.3d at 845. Accordingly, "a Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is '*apparent from the face of the complaint*' that the claim is time-barred." *Id.* (emphasis added); *see also, U.S. v. Stricker*, No. 11–14745, 2013 WL 3838069, at *4 (11th Cir. July 26, 2013); *Cantonis*, 2010 WL 6239354, at *5. Here, the Court finds that the facts necessary to make a choice of law determination[9] are

Corp. v. Hildebrandt (In re Hildebrandt)*, Adv. No. 08–A–00336, 2008 WL 5644893, at *4 (Bankr.N.D.Ill.Dec. 18, 2008) (*citing Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir.2007)). After considering the case law on both sides, the Court will apply Rule 9(b) to the Plaintiff's negligent misrepresentation claims.

7. Under Florida law, actions founded upon fraud or negligence are subject to a four-year statute of limitations. Fla. Stat. § 95.11(3)(a) and (j).

8. Under Illinois law, actions for fraud and negligence are included within the phrase "all actions not otherwise provided for," to which the five-year limitations period applies. 735 Ill. Comp. Stat. 5/13–205 (West 2008).

9. As the Court has previously determined, *see, e.g. Mukamal v. Cosmos, Inc. (In re Palm

Beach Finance Partners, P.P.)*, No. 11–02970–BKC–PGH–A (Bankr.S.D.Fla. July 30, 2013), the diversity jurisdiction approach is the proper choice of law approach for bankruptcy courts to apply. The diversity jurisdiction approach requires bankruptcy courts to follow the choice of law rules of the state in which the bankruptcy court sits. *Dzikowski v. Friedlander (In re Friedlander Capital Mgmt. Corp.)*, 411 B.R. 434, 441–42 (Bankr.S.D.Fla. 2009). Because this Court sits in the state of Florida, Florida choice of law rules govern. Florida's choice of law rules mandate that the Court employ the "significant relationship" test with respect to statute of limitations issues. *Merkle v. Robinson*, 737 So.2d 540, 542–43 (Fla.1999). The significant relationship choice of law test requires a detailed factual analysis which the Court may not properly undertake at the motion to dismiss stage. *See, e.g. Cantonis*, 2010 WL 6239354, at *5 ("A choice of law analysis is premature

not clear on the face of the Amended Complaint, so the Court will not engage in a choice of law analysis at this stage in the proceedings in order to determine which state's statute of limitations applies. *See Cantonis,* 2010 WL 6239354, at *5 ("A choice of law analysis is premature at this stage because it requires resolution of fact issues beyond the scope of this 12(b)(6) motion to dismiss."). For these reasons, the Plaintiff's Amended Complaint need only properly allege a claim for relief under *any* potentially applicable state law in order to survive GECC's Motion to Dismiss.

The Plaintiff asserts that under either Illinois or Minnesota law,[10] the "discovery rule" delayed the accrual of all of his causes of action until the Palm Beach Funds became aware or should have become aware through exercise of reasonable diligence that they were injured through wrongful means. Minnesota Statute § 541.05, Subd. 1(6) provides a six-year statute of limitations "for relief on the ground of fraud, in which case the cause of action shall not be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud." Additionally, under both Minnesota and Illinois law, "courts have applied the discovery rule in ... negligence actions." *Cantonis,* 2010 WL 6239354 at *6 (*citing Klempka v.*

*G.D. Searle & Co.,* 963 F.2d 168, 170 (8th Cir.1992)); *see also, United Labs., Inc. v. Savaiano,* No. 06 C 1442, 2007 WL 4162808, at *3 (N.D.Ill. Nov. 19, 2007) ("the discovery rule is equally applicable to negligence claims") (*citing Doe v. Montessori Sch. of Lake Forest,* 287 Ill.App.3d 289, 223 Ill.Dec. 74, 678 N.E.2d 1082, 1089 (1997)). Thus, according to the Plaintiff, because the Palm Beach Funds' causes of action did not accrue until at least 2008 when Petters' purchase financing operation was exposed as a Ponzi scheme, the statute of limitations is not set to expire until at least 2014. GECC, on the other hand, contends that the Plaintiffs own allegations establish that if the Palm Beach Funds exercised reasonable diligence, they would have uncovered Petters' fraud immediately in 2002 or 2003. The Court disagrees with GECC.

On a Motion to Dismiss, the Court takes the Plaintiffs allegations at face value in assessing whether the Plaintiff plausibly states a claim for relief. Here, the Plaintiff alleges that (1) the Palm Beach Funds did not know of Petters' fraudulent conduct until September 2008, (2) the Palm Beach Funds did not discover Petters' fraud through their own diligence, and (3) the Palm Beach Funds could not have discovered Petters' fraud sooner through reasonable diligence. Am. Compl. ¶¶ 151–156. Furthermore, the Plaintiff alleges

---

at this stage because it requires resolution of fact issues beyond the scope of this 12(b)(6) motion to dismiss.").

**10.** The Plaintiff asserts that GECC ignores that the applicability of Minnesota law is strongly implicated by the facts of the case. Primarily, the Plaintiff takes issue with GECC's statement that "all of GECC's alleged conduct took place in its Chicago, Illinois office." Pl.'s Resp. (ECF No. 42) at 3 (*citing* GECC's Mot. to Dismiss at 10 n. 6). The Plaintiff contends that this statement is false, pointing out that (1) the GECC–Petters revolving credit line was originated by a Minnesota-

based GECC Vice President to a Minnesota borrower with a Minnesota guarantor; (2) GECC issued the Recommendation Letters to Petters in Minnesota for his use and dissemination in his Minnesota-based business; (3) GECC communicated with Petters in Minnesota; and (4) GECC appointed Petters as its agent to file the GECC Termination Statement in Minnesota. *Id.* at 3–4. Not only do the Plaintiff's contentions indicate that Minnesota law potentially governs the Plaintiff's claims, but they also indicate that there are significant factual disputes which prevent the Court from conducting a choice of law analysis at this stage in the proceedings.

that the Palm Beach Funds did not learn of GECC's alleged wrongdoing until 2009. *Id.* at ¶ 156. Although GECC asserts that through "reasonable diligence," the Plaintiff would have uncovered Petters' fraud immediately, it would be inappropriate at this stage of the proceedings for the Court to determine: (1) what actions would have qualified as "reasonable diligence," (2) whether the Palm Beach Funds took such actions and thus exercised reasonable diligence, and (3) when the Palm Beach Funds actually learned of Petters' fraud and GECC's alleged role in the fraud. Determining these issues at this stage of the proceedings would require the Court to look beyond the allegations of the Amended Complaint and to make findings of fact [11]—neither of which is permitted on consideration of a Motion to Dismiss for failure to state a claim.

Therefore, because the statute of limitations defense is an affirmative defense and because the Plaintiff plausibly alleges that his causes of action did not accrue until at least 2008 when the Palm Beach Funds discovered Petters' fraud, the Court finds that it would be inappropriate to determine at this stage that the Plaintiff's claims are barred by the statute of limitations. As a result, the Court will deny GECC's Motion to Dismiss on this basis.

### III. *Count 9—Negligence*

#### A. Duty

The threshold question in any claim of negligence is the existence of a duty of care owed by the defendant to the plaintiff. GECC contends that Count 9 must be dismissed because the Plaintiff

fails to properly allege a duty owed by GECC to the Palm Beach Funds. The Court agrees.

In its Amended Complaint, the Plaintiff alleges that: (1) GECC had a special relationship with Petters and Petters Capital; (2) GECC had a duty to disclose the truth to the Palm Beach Funds; (3) GECC knew that the Palm Beach Funds were to be defrauded or that the Palm Beach Funds were within a class of persons GECC knew were to be defrauded; and (4) GECC owed a duty of care to protect the Palm Beach Funds from being defrauded and victimized by Petters and Petters Capital. In his *Response in Opposition to the Motion to Dismiss* (ECF No. 42), the Plaintiff goes to great lengths to explain why based upon these factual allegations, GECC owed a duty of care to the Palm Beach Funds, asserting that:

1. Duty, which is a flexible concept, arises where action creates the risk of foreseeable harm, and GECC's actions created a risk of foreseeable harm;

2. Once GECC "spoke," it had a duty to make a full and fair disclosure and to speak completely and fully so that its words did not mislead the Palm Beach Funds;

3. GECC had special knowledge of material facts to which the Palm Beach Funds had no access, and thus, GECC had a duty to disclose those facts to the Palm Beach Funds; and

4. GECC and Petters had a special relationship which gave rise to GECC's duty of care to the Palm Beach Funds.

11. "The question of whether [plaintiffs] knew or should have known of their claims against [defendant] is a question of fact." *United Labs., Inc. v. Savaiano*, No. 06 C 1442, 2007 WL 4162808, at *3 (N.D.Ill. Nov. 19, 2007) (*citing Jackson Jordan, Inc. v. Leydig, Voit &*

*Mayer*, 158 Ill.2d 240, 198 Ill.Dec. 786, 633 N.E.2d 627, 631 (1994)); *see also, Clark v. Galen Hosp. Ill., Inc.*, 322 Ill.App.3d 64, 255 Ill.Dec. 168, 748 N.E.2d 1238 (2001), *appeal den.*, 196 Ill.2d 538, 261 Ill.Dec. 346, 763 N.E.2d 316 (2001).

Pl.'s Resp. at 17–20. The Plaintiff further contends that the Court should not grant GECC's request that Count 9 be dismissed for failure to allege a duty because whether a duty to disclose exists depends on the circumstances of each individual case and determination of this issue is inappropriate at the motion to dismiss stage. Finally, the Plaintiff asserts that GECC is judicially estopped from arguing that it had no duty to disclose Petters' fraud to the Palm Beach Funds because of a position taken by GECC in a previous case styled *Professional Recovery Services, Inc. v. GECC,* No. 06–2829 (D.N.J.2006).

### i. *Judicial estoppel*

▆▆▆▆▆ To begin with, the Court finds that GECC is not judicially estopped from arguing that it did not owe a duty to the Palm Beach Funds. "Judicial estoppel is an equitable doctrine invoked at a court's discretion." *Burnes v. Pemco Aeroplex, Inc.,* 291 F.3d 1282, 1285 (11th Cir.2002). In order for a court to apply the doctrine of judicial estoppel, "[f]irst, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding. Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system." *Id.* (internal quotation marks omitted) (*quoting Salomon Smith Barney, Inc. v. Harvey, M.D.,* 260 F.3d 1302, 1308 (11th Cir.2001)). In deciding whether to exercise their discretion and apply judicial estoppel:

> Courts typically consider: (1) whether the present position is "clearly inconsistent" with the earlier position; (2) whether the party succeeded in persuad-

ing a tribunal to accept the earlier position, so that judicial acceptance of the inconsistent position in a later proceeding creates the perception that either court was misled; and (3) whether the party advancing the inconsistent position would derive an unfair advantage on the opposing party.

*Id.* (*citing New Hampshire v. Maine,* 532 U.S. 742, 750, 121 S.Ct. 1808, 1815, 149 L.Ed.2d 968 (2001)).

In the *Professional Recovery Services* proceeding,[12] the issue was whether GECC owed a duty to conceal corporate information and the alleged fraudulent activity of a collection agency employed by GECC. Arguing that it had no duty to conceal such information, and conversely, that it was permissible for GECC to alert other companies which GECC knew used the collection agency, GECC argued that "[c]orporations should be encouraged to take reasonable steps to inform law enforcement authorities and at-risk entities about information relating to potential security breaches." *Notice of Filing* (ECF No. 43), Ex. 3 at 25. This argument—offered by GECC in support of its position that it had no duty to conceal information related to another corporation's fraudulent activity—is not clearly inconsistent with GECC's argument here that it had no affirmative duty to disclose its alleged knowledge of Petters' fraud to the Palm Beach Funds. GECC's prior assertion that "corporations should be encouraged to take reasonable steps to inform law enforcement authorities and at-risk entities about information relating to potential security breaches" is not the equivalent of taking the position that corporations have

---

**12.** The Plaintiff filed copies of five documents from the *Professional Recovery Services* proceeding: (1) Notice of GECC's Motion for Summary Judgment; (2) GECC's Statement of Material Undisputed Facts; (3) GECC's Brief in Support of its Motion for Summary Judgment; (4) Exhibit to Statement of Undisputed Facts; and (5) Opinion. *See Notice of Filing* (ECF No. 43). GECC did not object to the authenticity of these documents and cites to them without objection in its *Reply in Support of Motion to Dismiss* (ECF No. 53).

an *affirmative duty* to reveal to unrelated third parties any and all knowledge of another's fraudulent conduct.

Accordingly, the Court refuses to exercise its discretion and invoke judicial estoppel as the Court finds that the position taken by GECC in the *Professional Recovery Services* proceeding is not clearly inconsistent with the position taken by GECC in proceeding currently before this Court.

ii. *Duty arising from creation of risk of foreseeable harm*

▉ The Plaintiff makes a brief argument that Florida, like other jurisdictions, recognizes that a legal duty will arise whenever a human endeavor creates a generalized and foreseeable risk of harming others. In so arguing, the Plaintiff contends that the facts and public policy concerns of this case "demand the imposition of a duty." However, in the same case cited by the Plaintiff for the above proposition, *Langbehn v. Public Health Trust of Miami–Dade County,* the U.S. District Court for the Southern District of Florida noted that "the Florida Supreme Court has recently cautioned that 'abstract notions of sound public policy are not proper judicial considerations' in determining whether a duty exists." 661 F.Supp.2d 1326, 1335 (S.D.Fla.2009) (*quoting Wallace v. Dean,* 3 So.3d 1035, 1041 n.9 (Fla.2009)). The Court agrees and will not impose a duty on GECC based solely upon "abstract notions of sound public policy."

▉ Furthermore, when courts impose a duty based upon the creation of a risk of foreseeable harm, they generally do so only when the defendant has engaged in some affirmative conduct which has directly placed the plaintiff in harm's way. Otherwise, "[g]enerally, no duty is imposed on an individual to protect another from harm," even when his failure to do so may

increase the risk of foreseeable harm to that person. *Domagala v. Rolland,* 787 N.W.2d 662, 668 (Minn.Ct.App.2010); *see also, T.W. v. Regal Trace, Ltd.,* 908 So.2d 499, 503 (Fla. 4th DCA 2005) (noting that although the law generally will recognize a duty when a defendant's conduct creates a foreseeable zone of risk, "a person or entity 'generally has no duty to take precautions to protect another against criminal acts of third parties'"); *Iseberg v. Gross,* 366 Ill.App.3d 857, 304 Ill.Dec. 1, 852 N.E.2d 251, 254–55 (2006) (same); *Plowman v. Glen Willows Apartments,* 978 S.W.2d 612, 614 (Tex.Ct.App.1998) (same). In fact, "that an actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action ... unless a special relationship exists ... between the actor and the other which gives the other the right to protection." *Id.* (internal quotation marks omitted) (*quoting Delgado v. Lohmar,* 289 N.W.2d 479, 483 (Minn.1979)).

Here, the duty alleged by the Plaintiff is that GECC had a duty to warn the Palm Beach Funds, a party with which GECC indisputably had no direct contact or relationship, that Petters was perpetrating a fraud. Accordingly, without more, public policy considerations and the alleged creation of a risk of harm as a result of GECC's failure to act do not give rise to a duty of care owed by GECC to the Palm Beach Funds.

iii. *Duty to make a full and fair disclosure*

The Plaintiff also asserts that GECC spoke to the Palm Beach Funds through the Recommendation Letter and the GECC Termination Statement and that once GECC spoke, GECC had a duty to make a full and fair disclosure, which included a duty to correct the Recommenda-

tion Letter once GECC realized it was inaccurate. The Court disagrees.

■ To begin with, the Plaintiff's assertion that GECC spoke to the Palm Beach Funds through the Recommendation Letter and the GECC Termination Statement is questionable.[13] Nevertheless, even if GECC did speak to the Palm Beach Funds through the Recommendation Letter and the GECC Termination Statement, the duty to "speak fully" and to correct prior inaccurate disclosures applies only between two parties to a transaction or two parties who have some kind of preexisting, fiduciary-like relationship.[14] All of the cases cited by the Plaintiff involve alleged misrepresentations or non-disclosures by parties which have some kind of relationship with each other or by parties in connection with public securities offerings or other business transactions, scenarios which are not present here. For example, the Plaintiff cites to *Rochester Methodist Hospital v. Travelers Insurance Company* for the following proposition:

> Though one may be under no duty to speak as to a matter, if he undertakes to do so, either voluntarily or in response to inquiries, he is bound not only to state truly what he tells, but also not to suppress or conceal any facts within his knowledge which materially qualify those stated. If he speaks at all, he must make a full and fair disclosure.

728 F.2d 1006, 1018 (8th Cir.1984). The Plaintiff, however, neglects to mention that *Rochester Methodist* was a fraud case in which an employee of the plaintiff's insurance company made a misrepresentation to the plaintiff regarding a claim which was previously denied by the insurance company. *Id.* The *Rochester Methodist* court made the above-cited statement of law in order to reinforce its conclusion that "half truths may amount to fraudulent misrepresentations." *Id.* The case had nothing to do with negligence, and more importantly, the plaintiff and the defendant insurance company had an ongoing relationship as insurer and insured. Accordingly, the *Rochester Methodist* opinion provides no support for the proposition that once GECC indirectly spoke to the Palm Beach Funds, a party with whom the GECC had no direct relationship, it owed some kind of negligence-based duty to the Palm Beach Funds to make a full and fair disclosure and to correct prior inaccurate disclosures.

The Plaintiff also cites to *Rudolph v. Arthur Andersen & Company*, 800 F.2d 1040 (11th Cir.1986), a case involving statements made by an accounting firm in connection with a public securities offering. The statements made by the accounting firm were accurate when made. However, the plaintiff alleged that that accounting firm eventually became aware that DeLorean, the company for whom the accounting report was made, was using its accounting statements and reports to commit a significant fraud. The *Rudolph* court held:

> Standing idly by while knowing one's good name is being used to perpetrate a

---

13. At the very least, it is undeniable that based upon the allegations, GECC did not speak directly to the Palm Beach Funds through the Recommendation Letter and the GECC Termination Statement. Any alleged statements made by GECC to the Palm Beach Funds were made indirectly, at best.

14. Indeed, 9 C.J.S. *Banks and Banking* § 250 (2013) lays out the "special circumstances" under which a bank may have a duty of disclosure. Included in this group of circumstances is the following: "[o]ne who speaks must say enough to prevent the words from misleading the other party." However, the C.J.S. discussion, like all the cases it cites and all the case cited by the Plaintiff, assumes the existence of some kind of business transaction or preexisting relationship between the plaintiff and the defendant-bank.

fraud is inherently misleading. An investor might reasonably assume that an accounting firm would not permit inclusion of an audit report it prepared in a placement memo for an offering the firm knew to be fraudulent, and that such a firm would let it be known if it discovered to be fraudulent an offering with which it was associated. It is not unreasonable to expect an accountant, who stands in a "special relationship of trust *vis-a-vis* the public," and whose "duty is to safeguard the public interest," to disclose fraud in this type of circumstance, where the accountant's information is obviously superior to that of the investor, the cost to the accountant of revealing the information minimal, and the cost to investors of the information remaining secret potentially enormous.

800 F.2d at 1044–45 (internal citations omitted). The Plaintiff maintains that if the accounting firm in *Rudolph* had a duty to correct its inaccurate report and disclose DeLorean's fraud to potential investors, then GECC, a sophisticated commercial bank, had a similar duty. However, the duties to the public of an accounting firm or law firm preparing a report which is to be included in a company's public offering are unique. Furthermore, complex securities laws play an important role in defining the duties of professionals working on public securities offerings. GECC, who was not Petters' depository bank, provided no accounting services to Petters, and played no part in any Petters' public securities offerings, had no such public duty.

In *W.W. Vincent and Company v. First Colony Life Insurance Company,* another case cited by the Plaintiff, the court considered whether the defendant had a duty to speak in the context of a fraudulent

concealment claim, not a negligence claim. 351 Ill.App.3d 752, 286 Ill.Dec. 734, 814 N.E.2d 960, 969 (2004). More importantly, the plaintiff and the defendant in *W.W. Vincent* were parties to a distinct business transaction to which the alleged nondisclosure was material. *Id.* In fact, the Court specifically noted that "[t]he concealment of a material fact *during a business transaction* is actionable if done with the intention to deceive under circumstances creating an opportunity and duty to speak." *Id.* (internal citations omitted) (emphasis added). It was in that context that the court held that the defendant imposed upon itself a duty to disclose by making a misleading statement to the plaintiff. *Id.*

Similarly, in *Jetpay Merchant Services, LLC v. Miller,* the plaintiff alleged that the defendants, acting as directors or officers of USN Corporation, misrepresented the way in which USN Corporation shipped goods to its customers, thereby inducing the plaintiff to enter into an agreement it would otherwise have avoided, and further misrepresented that USN Corporation would reimburse the plaintiff for its losses, thereby stringing the plaintiff along and causing the plaintiff to incur additional losses. Civ. Action No. 3:07–CV–0950–G, 2007 WL 2701636, at *1 (N.D. Tex Sept. 17, 2007). In the context of assessing the plaintiffs negligent misrepresentation claims, the court noted that "[e]ven without a special relationship, there is always a duty to correct one's own prior false or misleading statement." *Id.* at *5 (alteration in original) (*quoting Trs. of the Nw. Laundry & Dry Cleaners Health & Welfare Trust Fund v. Burzynski,* 27 F.3d 153, 157 (5th Cir.1994), *cert. denied,* 513 U.S. 1155, 115 S.Ct. 1110, 130 L.Ed.2d 1075 (1995)).[15] However, like the parties

---

15. The case of *Trustees of the Northwest Laundry & Dry Cleaners Health & Welfare Trust*

*Fund v. Burzynski* dealt with a fraud claim brought by an ERISA health insurance fund

in *W.W. Vincent* (and unlike GECC and the Palm Beach Funds), the plaintiff and the defendants in *Jetpay* were parties to a distinct business transaction. Thus, the *Jetpay* case simply stands for the simple proposition that the duties owed between parties to a business transaction include the duty to make full and fair disclosures upon speaking and to correct misleading statements.

The cases cited by the Plaintiff, including specifically *Rudolph, W.W. Vincent, Jetpay,* and *Rochester Methodist,* are factually dissimilar from the case now before the Court and thus provide little support for the proposition that once GECC "spoke" to the Palm Beach Funds, a party with whom the GECC had no direct relationship, it owed some kind of negligence-based duty to the Palm Beach Funds to make a full and fair disclosure and to correct prior inaccurate disclosures. In the absence of any kind of alleged relationship between GECC and the Palm Beach Funds, the Court finds that the duty to make a full and fair disclosure after choosing to speak is not applicable here. Accordingly, the fact that GECC allegedly spoke to the Palm Beach Funds did not give rise to any kind of duty which required GECC to make a "full and fair

disclosure" and to correct any and all prior misstatements.

### iv. Duty arising from special knowledge

The Plaintiff also contends that GECC had a duty to disclose and warn the Palm Beach Funds of Petters' fraud since it had "special knowledge" of material facts to which the Palm Beach Funds did not have access.

■ However, like the duty to make a full and fair disclosure upon speaking, the duty to disclose "special knowledge" of material facts arises only in the context of a business transaction to which both the plaintiff and the defendant are a party or where both parties had some kind of preexisting relationship. *Stephenson v. Deutsche Bank AG,* 282 F.Supp.2d 1032, 1060–61 (D.Minn.2003);[16] *Albion Alliance Mezzanine Fund, L.P. v. State St. Bank & Trust Co.,* 8 Misc.3d 264, 797 N.Y.S.2d 699, 704 (2003), *aff'd.* 2 A.D.3d 162, 767 N.Y.S.2d 619 (2003) ("Although a duty to disclose has sometimes been found to arise where one party has superior knowledge, the context has invariably involved direct negotiations between parties to a business transactions."); *Hooper v. Barnett Bank of*

---

against a doctor who allegedly misrepresented the legality of his medical treatments in order to get reimbursements from the fund for the treatments. 27 F.3d at 157. In analyzing whether the doctor had a duty to disclose the legality of his treatments to the fund, the court noted that "[a] speaker who makes a partial disclosure assumes a duty to tell the whole truth even when the speaker was under no duty to make the partial disclosure." *Id.* As with the other cases discussed *supra,* the *Burzynski* case involved two parties—doctor and health insurance fund—who had a direct, ongoing commercial relationship with each other, and the doctor made the allegedly fraudulent nondisclosure in the course of seeking payment from the health insurance fund.

**16.** The Plaintiff cites to the *Stephenson* case to support his argument that GECC had a duty to the Palm Beach Funds based on "special knowledge" of material facts to which another party did not have access. However, the *Stephenson* case makes clear that such a duty only arises between two parties to a transaction: "[I]f a party conceals a fact *material to the transaction,* and peculiarly within his own knowledge, knowing that the other party acts on the presumption that no such fact exists, it is as much a fraud as if the existence of such fact were expressly denied, or the reverse of it expressly stated." 282 F.Supp.2d 1032, 1060 (emphasis added) (*quoting Richfield Bank and Trust Co. v. Sjogren,* 309 Minn. 362, 244 N.W.2d 648, 650 (1976)).

*West Fla.,* 474 So.2d 1253, 1257 (Fla. 1st DCA 1985) (acknowledging that although even a bank-depositor relationship does not ordinarily impose a duty of disclosure upon the bank, one of the circumstances in which a duty to disclose may arise *between a bank and its depositor* is when one who has knowledge of material facts to which other party does not have access may have a duty to disclose these facts to other parties). Here, as previously discussed, the Plaintiff does not allege that GECC and the Palm Beach Funds were parties to a business transaction or that they had any kind of direct relationship with each other, let alone a fiduciary relationship.

Accordingly, the Court finds that the duty to disclose "special knowledge" of material facts to which another party did not have access is inapplicable in the case now before the Court and does not support the Plaintiff's allegation that GECC had a duty to disclose certain information to the Palm Beach Funds.

v. *Duty arising from special relationship*

Lastly, the Plaintiff contends, albeit briefly, that GECC had a duty to prevent the criminal actions of Petters because GECC had a special relationship with Petters and had the ability to control Petters. For the reasons discussed below, the Court finds that the Plaintiff does not allege a plausible duty of care owed by GECC to the Palm Beach Funds based upon GECC's alleged special relationship with Petters.

As a general rule, there is no duty to control the conduct of a third person so as to prevent him from causing physical harm to another unless: (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (b) a special relation exists between the actor and the other which gives to the other a right to protection. Restatement (Second) of Torts § 315 (1965); *Reider v. Dorsey,* 98 So.3d 1223, 1226–27 (Fla. 3d DCA 2012) (noting that Florida follows the Restatement (Second) approach); *Estate of Johnson v. Condell Mem'l Hosp.,* 119 Ill.2d 496, 117 Ill.Dec. 47, 520 N.E.2d 37, 40 (1988) (same, as to approach followed by Illinois); *Jaramillo v. Weaver,* No. A06–2343, 2007 WL 4303775, at *4 (Minn. Ct.App. Dec. 11, 2007) (same, as to approach followed by Minnesota). Here, the Plaintiff contends that a special relationship existed between Petters and GECC such that GECC had the ability to control Petters' conduct and that as a result, GECC had a duty to control Petters' conduct by disclosing the nature of Petters' fraudulent enterprise to the Palm Beach Funds.

 To begin with, the types of "special relationships" which give rise to negligence-based duties of care typically fall into the following five categories:

1. Duty of parent to control conduct of child;

2. Duty of master to control conduct of servant; [17]

(i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or
(ii) is using a chattel of the master, and
(b) the master
(i) knows or has reason to know that he has the ability to control his servant, and

---

**17.** A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if:
(a) the servant

3. Duty of possessor of land or chattels to control conduct of licensee;

4. Duty of those in charge of persons who have dangerous propensities; [18] and

5. Duty of person having custody of another to control conduct of third persons. [19]

Restatement (Second) of Torts §§ 315–20. Within these five categories, courts have recognized special relationships in a variety of contexts, including but not limited to: employer-employee, landlord-tenant, landowner-invitee, school-minor, university-adult student, car rental agency-customer, and innkeeper-guest. *Janis v. Pratt & Whitney Can., Inc.*, 370 F.Supp.2d 1226, 1230–31 (M.D.Fla. 2005). The alleged relationship between GECC and Petters, however, does not fall into any of the five categories and bears no resemblance to the examples of recognized special relationships. Although the foregoing list of recognized relationships is not necessarily an exclusive one, under the special relationship exception to the general rule, "the Restatement suggests that the duty to aid or protect another will be imposed only in relationships involving some degree of dependence or mutual dependence." *Newton v. Tinsley*, 970 S.W.2d 490, 493 (Tenn.Ct. App.1997) (*citing* Restatement (Second) of Torts § 314A cmt. b (1964)).

Additionally, it is *highly* implausible that GECC could have controlled the criminal conduct of Petters, who by all accounts was a professional fraudster who orchestrated a multi-billion dollar Ponzi scheme, by refusing to authorize the filing of the GECC Financing Statement or by "correcting" the Recommendation Letter. See Am. Compl. ¶ 238, ¶ 240. Further, it is equally implausible and logically circular that (1) GECC's duty of care to the Palm Beach Funds arose from its ability to control Petters by means of exposing Petters' fraudulent conduct; (2) the only way GECC could have fulfilled its duty of care would have been to expose Petters' fraudulent conduct; and (3) GECC breached its duty of care to the Palm Beach Funds by failing to expose Petters' fraudulent conduct. This kind of circular logic flies in the face of the well-established law of negligence.

For these reasons, the Court finds that the Plaintiffs contention that he properly alleges that GECC had a duty to disclose Petters' fraud because of GECC's special relationship with Petters is unpersuasive.

### vi. *The Plaintiff fails to plausibly allege a duty*

■ Although the Plaintiff need not meet the heightened Rule 9(b) standards when pleading a claim for negligence, the Plaintiff must still allege a "plausible"

---

(ii) knows or should know of the necessity and opportunity for exercising such control. Restatement (Second) of Torts § 317.

**18.** One who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm. Restatement (Second) of Torts § 319.

**19.** One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of

his normal power of self-protection or to subject him to association with persons likely to harm him, is under a duty to exercise reasonable care so to control the conduct of third persons as to prevent them from intentionally harming the other or so conducting themselves as to create an unreasonable risk of harm to him, if the actor: (a) knows or has reason to know that he has the ability to control the conduct of the third persons, and (b) knows or should know of the necessity and opportunity for exercising such control. Restatement (Second) of Torts § 320.

claim that meets Rule 8(a)'s pleading standard and the standards articulated by the Supreme Court of the United States in *Twombly* and *Iqbal.* The Court finds that the Plaintiff fails to do so.

In Count 9, the Plaintiff makes the following allegations regarding the duty of care owed by GECC to the Palm Beach Funds:

233. GECC had a special relationship with Petters and Petters Capital.

234. GECC had a duty to disclose the truth to the Palm Beach Funds.

235. GECC knew that the new lender to Petters Capital, the Palm Beach Funds, was to be defrauded. Alternatively, the Palm Beach Funds were within a class of persons GECC knew were to be defrauded, *i.e.*, lenders to Petters Capital.

236. GECC owed a duty of care to protect the Palm Beach Funds from being defrauded and victimized by Petters and Petters capital.

237. GECC breached this duty by knowingly placing its agent (Petters Capital) in a position to commit fraud upon the Palm Beach Funds (via the GECC Financing Statement Termination) and its agent did so while acting within the granted scope of authority.

238. GECC had the ability to control Petters Capital and thwart its efforts to defraud the Palm Beach Funds by refusing to appoint Petters Capital as its agent to terminate the GECC Financing Statement.

239. GECC further had the continuing ability to control Petters and Petters Capital by disclosing to law enforcement, regulators, the public, Petters Capital's or Costco's banks, or the Palm Beach Funds GECC's knowledge of the fraud.

240. GECC had the continuing ability to control Petters and Petters Capital by correcting the Recommendation Letter.

Am. Compl. ¶¶ 233–40. Accepting these allegations as true for the purposes of the Motion to Dismiss, the Plaintiff still fails to allege a plausible duty of care. The conclusory statement that GECC "owed a duty of care" is insufficient. The Plaintiff must allege sufficient facts which plausibly establish that GECC owed a duty of care to the Palm Beach Funds. The Plaintiff fails to do so. As discussed above, not one of the theories advanced by the Plaintiff is applicable here such that the Court can find that the factual allegations contained in the Amended Complaint plausibly establish a duty of care.

 Additionally, "[a] bank has no duty to third parties to disclose information about a [bank] customer's account." *Kesselman v. Nat'l Bank of Ariz.*, 188 Ariz. 419, 422, 937 P.2d 341 (Ariz.Ct.App. 1996).[20] More specifically, "[a] bank ordinarily does not have an obligation to dis-

---

20. A multitude of other cases arising in various circumstances unequivocally state that banks generally owe no duties to third parties in the absence of some kind of preexisting relationship. *Mose v. Keybank Nat'l Ass'n,* 464 Fed.Appx. 260, 262–63 (5th Cir.2012); *Frost Nat'l Bank v. Midwest Autohaus, Inc.,* 241 F.3d 862, 874 (7th Cir.2001) (bank did not owe duty to another bank to disclose a check kiting scheme the first bank had discovered); *El Camino Res., LTD v. Huntington Nat'l Bank,* 722 F.Supp.2d 875, 919 n. 11 (W.D.Mich.2010) (same); *Eubanks v. F.D.I.C,* 977 F.2d 166, 170 n. 3 (5th Cir.1992) ("banks ordinarily owe no duty, fiduciary or otherwise, to third person"); *Guidry v. Bank of LaPlace,* 661 So.2d 1052, 1059 (La.App.1995) (bank was "clearly under no duty to disclose information about its customer to a non-customer"); *E.F. Hutton Mortg. Corp. v. Equitable Bank, N.A.,* 678 F.Supp. 567 (D.Md.1988) (bank had no duty to inform third party of its suspicions of fraud by its customer, as there was no contractual or fiduciary relationship requiring disclosure).

close information regarding a borrower to the borrower's investors … *even where the bank might benefit from its silence.*" *Albion Alliance Mezzanine Fund, L.P.,* 797 N.Y.S.2d at 704 (emphasis added); *see also,* 9 C.J.S. *Banks and Banking* § 250. In fact, "[g]enerally, banks have a duty to their 'customers *not to disclose* the customers' financial conditions to third parties.'" *Kesselman,* 188 Ariz. at 422, 937 P.2d 341 (emphasis added); *Hooper,* 474 So.2d at 1259 ("a bank has a duty not to disclose the financial condition of its customers"). The fact that it is alleged that Petters and GECC had ended their borrower/lender relationship at the time of GECC's alleged negligence only strengthens the Court's conclusion that GECC owed no duty of disclosure to the Palm Beach Funds.

Based upon the Plaintiffs allegations and for the additional reasons just discussed, the Court finds that the Plaintiff fails to plausibly allege a duty of care.

## B. Breach

In addition to the Plaintiff's failure to allege a duty of care, Count 9 also fails to state a claim on the basis that the Plaintiff does not adequately allege how GECC breached its alleged duty of care. The only allegation pertaining to GECC's breach is the following: "GECC breached [its] duty by knowingly placing its agent (Petters Capital) in a position to commit fraud upon the Palm Beach Funds (via the GECC [Termination Statement]) and its agent did so while acting within the granted scope of authority." Am. Compl. § 237. Accepting this allegation at face value, it appears that the Plaintiff alleges that GECC had an overarching duty to protect the Palm Beach Funds from all aspects of Petters' fraudulent conduct and breached this general duty of protection by "knowingly" allowing Petters Capital, as its agent, to defraud the Palm Beach Funds by filing the GECC Termination Statement. Not only is the statement that GECC acted "knowingly" confusing in the context of a negligence claim, but it is entirely implausible that GECC breached whatever alleged duty of care it owed to the Palm Beach Funds simply by authorizing GECC to file a UCC termination statement. Accordingly, the Court finds that the Plaintiff fails to plausibly allege the element of breach.

## C. Count 9 shall be dismissed for failure to state a claim

For the reasons just discussed, the Court finds that Count 9 must be dismissed as the Plaintiff fails to plausibly allege a duty of care or a breach of that duty and thus, fails to state a claim for negligence.

## IV. *Fraud claims—Counts 3, 4, 5, 7, and 8*

The Plaintiff institutes various fraud claims—five in total—which at their core, all generally seek to remedy the same alleged wrongdoing: GECC's failure to alert the Palm Beach Funds to Petters' fraudulent conduct after GECC allegedly discovered this fraudulent conduct. For the reasons discussed below, the Court finds that all five counts fail to state claims for relief which are facially plausible.

## A. Counts 3 and 5—Fraud by omission and fraudulent concealment

In Count 3 of the Amended Complaint, the Plaintiff asserts a cause of action against GECC for fraud by omission. In Count 5 of the Amended Complaint, the Plaintiff asserts a cause of action against GECC for fraudulent concealment. Fraud by omission and fraudulent concealment are very similar forms of common law fraud. Fraud by

omission is common law fraud by means of a failure to disclose a material fact—rather than by means of an affirmative misrepresentation—in the face of the a duty to disclose that fact to the plaintiff. Fraudulent concealment is common law fraud by means of actively concealing a material fact in the fact of a duty to disclose that fact to the plaintiff. Specifically, in Florida,[21] the elements of a cause of action for fraudulent concealment or fraud by omission are:

1. The defendant concealed or failed to disclose a material fact;

2. The defendant knew or should have known that the material fact should be disclosed or not concealed;

3. The defendant acted in bad faith;

4. The defendant knew that by concealing or failing to disclose the material fact, the plaintiff would be induced to act;

5. The plaintiff suffered damages as a result of the concealment or failure to disclose; and

6. The defendant had a duty to speak.

*R.J. Reynolds Tobacco Co. v. Martin*, 53 So.3d 1060, 1068–69 (Fla. 1st DCA 2010) (*citing Friedman v. Am. Guardian Warranty Servs., Inc.*, 837 So.2d 1165, 1166 (Fla. 4th DCA 2003); *Gutter v. Wunker*, 631 So.2d 1117, 1118 (Fla. 4th DCA 1994)). The scenarios which may give rise to a duty to speak include: (a) one party to a

transaction who speaks has a duty to say enough to prevent his words from misleading the other party; (b) one party to a transaction who has special knowledge of material facts to which the other party does not have access may have a duty to disclose those facts to the other party; (c) one party to a transaction who stands in a confidential or fiduciary relation to the other party to a transaction has a duty to disclose material facts. *Klein v. First Edina Nat. Bank*, 293 Minn. 418, 196 N.W.2d 619, 622 (Minn.1972); *Friedman*, 837 So.2d at 1166.

██ As discussed in Section III, *supra*,[22] the common thread running through each scenario which gives rise to a duty to speak is that both the plaintiff and the defendant must have been parties to a transaction or must have had some kind of preexisting fiduciary relationship. In the Amended Complaint, the Plaintiff alleges in Count 3 that "GECC had a duty to disclose the truth about the [Petters' conspiracy] to the Palm Beach Funds," and in Count 5 that "GECC had a duty to disclose the truth to the Palm Beach Funds." Am. Compl. ¶¶ 188, 202. However, the Plaintiff alleges no facts which show that the Palm Beach Funds and GECC were parties to a transaction or had any kind of relationship with each other, let alone a fiduciary relationship. Because the Plaintiff fails to allege that the Palm Beach Funds and GECC were involved in a transaction or

---

**21.** The elements of fraudulent concealment or fraud by omission are largely identical under the laws of Florida, Illinois, and Minnesota. *Weidner v. Karlin*, 402 Ill.App.3d 1084, 342 Ill.Dec. 475, 932 N.E.2d 602, 605 (2010); *Masepohl v. Am. Tobacco Co., Inc.*, 974 F.Supp. 1245, 1250 (D.Minn.1997); *Exeter Bancorporation, Inc. v. Kemper Sec. Grp., Inc.*, 58 F.3d 1306, 1314 (8th Cir.1995). However, as discussed in footnote 24, *infra*, the level of reliance on the omission that the plaintiff must show differs under the laws of Florida, Illinois, and Minnesota.

**22.** The Court discussed the first two scenarios which may give rise to a duty to speak in relation to the duty element of the Plaintiff's negligence claim. The third scenario, which arises when one party stands in a confidential or fiduciary relation to the other party, has no applicability here as it is undisputed that the Palm Beach Funds and GECC had no fiduciary or confidential relationship with each other.

had any kind of relationship with each other, the Plaintiff cannot establish that GECC's duty to disclose Petters' fraudulent conduct arose from any one of the three scenarios described above. Accordingly, the Plaintiff fails to allege that GECC had a duty to speak, and Counts 3 and 5 each fail to state a claim for fraud.

Because Counts 3 and 5, which seek damages on account of GECC's alleged fraudulent concealment or fraud by omission, fail to plausibly allege that GECC had a duty to speak, the Court will dismiss Counts 3 and 5 for failure to state a claim.

### B. Counts 4 and 8—Fraudulent misrepresentation and fraud

▆▆▆ In Count 4, the Plaintiff asserts a claim for fraudulent misrepresentation. In Count 8, the Plaintiff asserts a claim for fraud. Fraud and fraudulent misrepresentation refer to the same cause of action—common law fraud.[23] The essential elements of common law fraud or fraudulent misrepresentation are:[24] (1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce plaintiff to act; (4) plaintiff's reliance upon the truth of the statement;

and (5) plaintiff's damages resulting from reliance on the statement. *Butler v. Yusem*, 44 So.3d 102, 105 (Fla.2010); *Tran-Central, Inc. v. Great S. Xpress, Inc.*, No. A09–460, 2010 WL 346388, at *6 (Minn.Ct. App. Feb. 2, 2010) (outlining the elements of common law fraud under Minnesota law); *Wernikoff v. Health Care Serv. Corp.*, 376 Ill.App.3d 228, 315 Ill.Dec. 524, 877 N.E.2d 11, 16 (2007) (outlining the elements of common law fraud under Illinois law). GECC asserts that Count 4 and Count 8 each fail to state a claim for fraud because neither recites with sufficient particularity under Federal Rule of Civil Procedure 9(b) the elements of a cause of action for common law fraud. The Court agrees.

#### i. Count 4—Fraudulent misrepresentation

▆▆ In Count 4, the Plaintiff re-alleges paragraphs 1 through 165 and includes the following additional allegations:

193. Given that there was no "excellent" customer status at GECC, GECC knew that the Recommendation Letter was false.

194. Given the content of the Kroll Re-

---

23. Fraudulent misrepresentation is simply one form of common law fraud. *See, e.g., Schrager v. N. Cnty. Bank*, 328 Ill.App.3d 696, 262 Ill.Dec. 916, 767 N.E.2d 376 (2002) (noting that fraudulent misrepresentation is simply a form of common law fraud—another being fraudulent concealment); *Bailey v. Trenam Simmons, Kemker, Scharf, Barkin, Frye & O'Neill, P.A.*, 938 F.Supp. 825, 829 (S.D.Fla. 1996) (same); *Ransom v. VFS, Inc.*, 918 F.Supp.2d 888, 899–900, n.11 (D.Minn.2013); *Friebel v. Paradise Shores of Bay Cnty., LLC*, No. 5:10–cv–120/RS–EMT, 2011 WL 831278, at *3 & n. 3 (N.D.Fla. Mar. 3, 2011); *Weidner*, 342 Ill.Dec. 475, 932 N.E.2d at 605 (stating that "fraudulent misrepresentation [is] also referred to as common law fraud").

24. As with fraudulent concealment, the elements of fraudulent misrepresentation under

the laws of Florida, Illinois, and Minnesota differ, if at all, only in the level of reliance required. Under Florida law, "justifiable reliance is not a necessary element of fraudulent misrepresentation." *Butler v. Yusem*, 44 So.3d 102, 105 (Fla.2010). In Illinois, on the other hand, the plaintiff must establish "justifiable" reliance in order to prevail on a fraudulent misrepresentation claim. *Neurosurgery & Spine Surgery, S.C. v. Goldman*, 339 Ill. App.3d 177, 274 Ill.Dec. 152, 790 N.E.2d 925 (2003). Finally, in Minnesota, the plaintiff must establish that he "reasonably" relied on the misrepresentation. *JJ Holand Ltd. v. Fredrikson & Byron, P.A.*, Civil No. 12–3064 ADM/TNL, 2013 WL 3716948, at *7 (D.Minn. July 12, 2013).

port [25] as well as Midkiff's fervent view that Petters lacked personal integrity,[26] GECC knew that the Recommendation Letter was false.

195. Given the discovery of the Petters conspiracy, GECC knew that the Recommendation Letter was false.

196. GECC intended that the Recommendation Letter reach and influence a class of persons of which the Palm Beach Funds were members.

197. The Palm Beach Funds, through their agent, justifiably relied upon the Recommendation Letter to their detriment and as a result, were damaged.

198. As a result, the Palm Beach Funds suffered over $1 billion in damages.

Am. Compl. ¶¶ 193–198. These allegations are insufficient. To begin with, the Plaintiff's fraudulent misrepresentation claim must be dismissed because it fails to identify a single false statement of material fact. The alleged falsity of the Recommendation Letter does not qualify as the identification of a false statement of material fact. The Recommendation Letter is a letter, not a fact, and it contains several different statements of fact. In order to state a claim for fraudulent misrepresentation, the Plaintiff must identify the false statement or statements of material fact which form the basis of the Plaintiff's fraudulent misrepresentation claim. It must not be left to GECC, as the defen-

dant, or the Court to guess which statements in the Recommendation Letter are the allegedly false ones.

■ Furthermore, when pleading fraud, Rule 9(b) of the Federal Rules of Civil Procedure requires that the plaintiff must state with particularity the circumstances constituting the fraud. "Circumstances" constituting fraud which must be pled with particularity include such matters as "time, place, and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Moua v. Jani–King of Minn., Inc.,* 613 F.Supp.2d 1103, 1110 (D.Minn.2009) (*quoting Commercial Prop. Invs., Inc. v. Quality Inns Int'l, Inc.,* 61 F.3d 639, 644 (8th Cir.1995)); *see also, Chi. Materials Corp. v. Hildebrandt (In re Hildebrandt),* Adv. No. 08–A–00336, 2008 WL 5644893, at *4 (Bankr.N.D.Ill.Dec. 18, 2008) (noting that "circumstances must include the 'who, what, when, where, and how: the first paragraph of any newspaper story' "). Because the Plaintiff fails to identify even a single false statement of material fact, the Plaintiff not only fails to satisfy Rule 9(b), but he also fails to satisfy Rule 8(a) with respect to the threshold element of fraudulent misrepresentation.

Even if the Court assumed that it was sufficient for the Plaintiff to allege that the Recommendation Letter was false, the Plaintiff also fails to plausibly allege that

---

**25.** According to the allegations of the Amended Complaint, prior to entering into a loan transaction with Petters, GECC hired a national investigatory firm, Kroll, to investigate Petters and prepare a report (the "Kroll Report"). Am. Compl. ¶ 33. The Kroll report allegedly revealed that Petters had a history of criminal and civil problems, including (1) arrest warrants for forgery and bad checks, and (2) "lying to a court and being found to have acted in 'bad faith.' " Am. Compl. ¶ 34.

**26.** According to the allegations of the Amended Complaint, Catharine Midkiff, then GECC's Senior Vice President of Risk and Underwriting, stated after meeting with Petters that she "clearly and on the record ... does not support this transaction. [She] believe[s] that the additional controls will largely prevent the opportunity for [GECC's] money to be used improperly but [she does] not approve of being in business with a person who has previously demonstrated a lack of integrity." Am. Compl. ¶ 36.

GECC had the specific intent to induce the Palm Beach Funds to act in reliance upon the Recommendation Letter and that the Palm Beach Funds actually relied upon the Recommendation Letter. *Spex, Inc v. Joy of Spex, Inc.,* 847 F.Supp. 567, 579 (N.D.Ill.1994) ("Fraud is an intentional tort, and a plaintiff must demonstrate that defendant had a specific intent to deceive or mislead and cause damage to that plaintiff through the defendant's fraudulent misrepresentations."); *Cruise v. Graham,* 622 So.2d 37, 40 (Fla. 4th DCA 1993) (fraud is an intentional tort); *Dresser v. HealthCare Servs., Inc.,* No. 8:12–cv–1572–T–24–MAP, 2013 WL 82155, at *4 (M.D.Fla. Jan. 7, 2013) ("[I]t is not necessary that the false statement be made directly to the injured party, 'provided [that the statement is] made with the intent that it shall reach … and be acted on by the injured party.'"). The Plaintiff alleges that "GECC intended that the Recommendation Letter reach and influence a class of persons of which the Palm Beach Funds were members." Am. Compl. ¶ 196. This allegation that GECC intended the Recommendation Letter to "influence a class of persons" is not sufficient to plausibly allege that at the time the Recommendation Letter was written, GECC intended the Recommendation Letter to induce the Palm Beach Funds to act.

The Plaintiff also alleges that the "[t]he Palm Beach Funds, through their agent, justifiably relied upon the Recommendation Letter." Am. Compl. ¶ 197. However, the Plaintiff, earlier in the Amended Complaint, also alleges the following:

> The Recommendation Letter was shared by Petters with Vennes. Vennes in turn waxed poetic about the successful Petters–GECC relationship as a part of his efforts to convince the Palm Beach Funds to lend to Petters. Vennes' representations to the Palm Beach Funds in regards to Petters' *"excellent"* relationship with GECC were influenced by the Recommendation Letter. The Palm Beach Funds, through its agent, justifiably relied upon these representations.

Am. Compl. ¶ 127 (emphasis in original). This earlier and more specific allegation indicates that the Palm Beach Funds never actually saw the Recommendation Letter. Instead, the Palm Beach Funds allegedly relied on the representations of Vennes—*not* GECC—who was "influenced" by the Recommendation Letter.

■ It is true that "false representations need not be made directly to the party claiming to have relied on them, but may instead be indirect, 'where a party makes false representations to another with the intent or knowledge that they be exhibited or repeated to a third party for the purpose of deceiving him.'" *Amerigas Propane, L.P. v. BP Am., Inc.,* 691 F.Supp.2d 844, 853 (N.D.Ill.2010) (*quoting St. Joseph Hosp. v. Corbetta Const. Co., Inc.,* 21 Ill.App.3d 925, 316 N.E.2d 51, 72 (1974)); *Harrell v. Branson,* 344 So.2d 604, 606 (Fla. 1st DCA 1977). "However, this requires reliance on the particular statement at issue, even though it is not made directly to the complaining party." *Amerigas Propane,* 691 F.Supp.2d at 853. Based upon the conflicting allegations discussed above, the Plaintiff does not plausibly allege that the Palm Beach Funds relied directly upon the allegedly false Recommendation Letter or the allegedly false statements of fact contained therein.

For the reasons discussed above, the Court finds that the Plaintiff fails to state a cause of action for fraudulent misrepresentation based upon the Plaintiff's failure to sufficiently allege pursuant to Rule 9(b): (1) A false statement of material fact; (2) GECC's intent that the statement induce the Palm Beach Funds to act; and (3) the Palm Beach Funds' reliance on the state-

ment or statements contained in the Recommendation Letter. Accordingly, Count 4 will be dismissed.

### ii. Count 8—Fraud

 Count 8 is simply titled "fraud," which the Court assumes to mean "common law fraud."[27] Although inartfully pled, the crux of Count 8 is that GECC's alleged appointment of Petters Capital as its agent to terminate the GECC Financing Statement furthered the Petters' conspiracy and constituted fraud upon the Palm Beach Funds. For the reasons discussed below, the Court finds that Count 8 fails to state a claim upon which relief can be granted.

As discussed above, the elements of common law fraud are as follows: (1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement. *Wernikoff*, 315 Ill.Dec. 524, 877 N.E.2d at 16. The following allegations are contained in Count 8 of the Amended Complaint:

223. The Plaintiff re-alleges paragraphs 1 through 165.

224. GECC had a duty to disclose "the truth" to the Palm Beach Funds.

225. GECC knew that the GECC Termination Statement would serve to further the Petters' conspiracy.

226. GECC knew that the GECC Termination Statement would be utilized to defraud future lenders to Petters.

227. GECC knew that the new lender to Petters, the Palm Beach Funds, was to be defrauded. Alternatively, the Palm Beach Funds were within a class of persons GECC knew were to be defrauded.

228. GECC appointed Petters Capital as its agent to terminate the GECC Financing Statement.

229. GECC knowingly placed its agent, Petters Capital, in a position to commit fraud upon the Palm Beach Funds, and its agent did so while acting within the granted scope of authority. Accordingly, GECC is liable for the acts done pursuant to that agency.

230. GECC had the ability to control Petters Capital and thwart its efforts to defraud the Palm Beach Funds by refusing to appoint Petters Capital as its agent to terminate the GECC Financing Statement.

231. As a result, the Palm Beach Funds suffered over $1 billion in damages.

Am. Compl. ¶¶ 223–31.

As indicated by the recitation of the allegations contained in Count 8, the Plaintiff fails to allege any elements of common

---

**27.** "The term 'fraud' is a generic one which embraces all the multifarious means resorted to by one individual to gain advantage over another by false suggestions or by suppression of the truth. 'Fraud,' a peculiar species of falsity, is the intentional misrepresentation of a material fact made for the purpose of inducing another to rely, and on which the other reasonably relies to his or her detriment." 37 Am.Jur.2d *Fraud and Deceit* § 1 (internal citations omitted). Although there can be no all-encompassing definition of "fraud," fraud always "involves a misrepresentation or suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." *Id.* (internal citation omitted); *see also, Douglas v. Ogle*, 80 Fla. 42, 85 So. 243 (1920) (noting that actual fraud always involves an untruth between the two parties to the transaction so that actual fraud may be reduced to misrepresentation and concealment).

law fraud. Most importantly, the Plaintiff fails to identify a false statement of material fact which the defendant knew was false. Because Count 8 fails to identify any false statement, the Plaintiff also fails to allege that (1) GECC intended that the statement induce the Palm Beach Funds to act; (2) the Palm Beach Funds relied upon the truth of the statement; and (3) the Palm Beach Funds were damaged as a result of relying on the statement. Furthermore, even if the Plaintiff's allegations could be viewed as proceeding under an agency theory, the Plaintiff still fails to allege that his agent, while acting within its scope of authority, made a false statement of material fact which the agent knew was false. The only thing that the Plaintiff alleges that Petters Capital did in its capacity as GECC's agent is file the GECC Termination Statement. This single act hardly qualifies as fraud.

For these reasons, Count 8 fails to state a claim for fraud which is plausible on its face and will be dismissed.

## C. Count 7—Negligent misrepresentation

In Count 7 of the Amended Complaint, the Plaintiff asserts a cause of action for negligent misrepresentation. GECC contends that Count 7 must be dismissed for failure to state a claim for the same general reasons that the fraudulent misrepresentation and fraud claims are deficient. The Court agrees.

▆▆▆▆ The tort of negligent misrepresentation has been applied in narrow circumstances,[28] usually involving a discrete business transaction between the plaintiff and the defendant where the defendant owes the plaintiff a duty to communicate accurate information. Accordingly, negligent misrepresentation is defined as follows:

> One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Gilchrist Timber Co. v. ITT Rayonier, Inc.*, 696 So.2d 334, 337 (Fla.1997) (*citing* Restatement (Second) of Torts § 552 (1977)); *see also, Florenzano v. Olson*, 387 N.W.2d 168, 174 n.3 (Minn.1986) (adopting the Second Restatement's definition of negligent misrepresentation); *McMahan v. Deutsche Bank AG*, No. 12 C 4356, 2013 WL 1403073, at *7 (N.D.Ill. Apr. 5, 2013) (same). A defendant's liability for negligent misrepresentation is limited to loss suffered: (1) by the person or one of a limited group of persons for whose benefit and guidance the misrepresenter intends to supply the information or knows that the recipient intends to supply it; and (2) through reliance upon it in a transaction that the misrepresenter intends the information to influence or knows that the recipient so intends or in a substantially similar transaction. *Gilchrist Timber*, 696 So.2d at 337 (*citing* Restatement (Second) of Torts § 552). However, "[t]he liability

---

28. The liability imposed for negligent misrepresentation is "more restricted than that for fraudulent misrepresentation.... The reason a narrower scope of liability is fixed for negligent misrepresentation than for deceit is to be found in the difference between the obligations of honesty and of care, and in the significance of this difference to the reasonable expectations of the users of information that is supplied in connection with commercial transactions." *Gilchrist Timber Co. v. ITT Rayonier, Inc.*, 696 So.2d 334, 337 (Fla. 1997) (*citing* Restatement (Second) of Torts § 552 cmt. a (1977)).

of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them." *Id.*

 Based upon the above definition, the Plaintiff must allege the following elements in order to state a claim for negligent misrepresentation: (1) a misrepresentation of material fact in the course of the defendant's business, profession, or employment, or in any other transaction in which he has a pecuniary interest; (2) the defendant either knew of the misrepresentation, made the misrepresentation without knowledge of its truth or falsity, or should have known the representation was false; (3) the defendant intended to induce another to act on the misrepresentation; and (4) injury resulted to a party acting in justifiable reliance upon the misrepresentation. *Smith v. Questar Capital Corp.*, No. 12–cv–2669 (SRN/TNL), 2013 WL 3990319, at *12 (D.Minn. Aug. 2, 2013) (*citing Baggett v. Elec. Local 915 Credit Union*, 620 So.2d 784, 786 (Fla. 2d DCA 1993)). Essentially, the elements of negligent misrepresentation and the elements of fraudulent misrepresentation are identical, except that the defendant need not know the statement is false and that the defendant and the plaintiff must have some kind of relationship such that the defendant owes a duty to the plaintiff to communicate accurate information. *McMahan*, 2013 WL 1403073, at *7 (internal quotations and citations omitted).

 Here, the basis of Count 7, just like the basis of Count 4, is the alleged falsity of the Recommendation Letter. Accordingly, in addition to re-alleging paragraphs 1 through 165, the Plaintiff makes the following allegations:

214. GECC intended that the Recommendation Letter reach and influence a class of persons of which the Palm Beach Funds were members.

215. Given that there was no "excellent" customer status at GECC, GECC knew that the Recommendation Letter was false, should have known it was false, or was without knowledge of its truth or falsity.

216. Given the content of the Kroll Report as well as Midkiff's fervent view that Petters lacked personal integrity, GECC knew that the Recommendation Letter was false, should have known it was false, or was without knowledge of its truth or falsity.

217. Given the discovery of Petters' fraud, GECC knew that the Recommendation Letter was false, should have known it was false, or was without knowledge of its truth or falsity.

218. GECC was negligent in issuing the Recommendation Letter.

219. GECC was negligent in not correcting the Recommendation Letter.

220. GECC intended to induce reliance by recipients of the Recommendation Letter, which was issued "To whom it may concern."

221. The Palm Beach Funds, through their agent, justifiably relied upon the Recommendation Letter to their detriment and as a result, were damaged.

222. As a result, the Palm Beach Funds suffered over $1 billion in damages.

Am. Compl. ¶¶ 213–222. Again, as with Count 4, the Plaintiff fails to identify a single false statement of material fact. Alleging that the Recommendation Letter is false does not qualify as an identification of a false statement of material fact. The Recommendation Letter contains numerous statements of fact. In order to state a claim for negligent misrepresentation, the Plaintiff must identify the particular false

statement or statements of material fact which form the basis of the Plaintiff's negligent misrepresentation claim. Furthermore, when pleading fraud, which includes negligent misrepresentation, Rule 9(b) of the Federal Rules of Civil Procedure requires that a party must state with particularity the circumstances constituting the fraud. "Circumstances" constituting fraud which must be pled with particularity include such matters as "time, place, and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Moua*, 613 F.Supp.2d at 1110 (*quoting Commercial Prop. Invs., Inc.*, 61 F.3d at 644); *see also, In re Hildebrandt*, 2008 WL 5644893, at *4. Because the Plaintiff fails to particularly identify even a single false statement of material fact, the Plaintiff not only fails to satisfy Rule 9(b), but he also fails to satisfy Rule 8(a) with respect to the threshold element of negligent misrepresentation.

■ Additionally, and equally as importantly, the Plaintiff fails to allege that GECC had a pecuniary interest in supplying the alleged misinformation. Unless the defendant has a public duty to supply the information at issue, a plaintiff may state a claim for negligent misrepresentation "only when the defendant has a pecuniary interest in the transaction in which the information is given. If he has no pecuniary interest and the information is given purely gratuitously, he is under no duty to exercise reasonable care and competence in giving it." *Blumstein v. Sports Immortals, Inc.*, 67 So.3d 437, 440 (Fla. 4th DCA 2011) (*quoting* Restatement (Second) of Torts § 552 cmt. c).[29] Indeed, courts have held that "the central principle operating [of the Second Restatement view] is that the defendant supplier of information must have a pecuniary interest in the transaction or context in which the information is supplied in order to merit the imposition of a duty of care in obtaining and communicating the information." *Sports Immortals, Inc.*, 67 So.3d at 441 (*quoting State by Bronster v. U.S. Steel Corp.*, 82 Hawai'i 32, 919 P.2d 294, 308 (1996)).

Here, as discussed extensively in Section III(A), *supra*, the Plaintiff fails to allege that GECC had a public duty to provide the information at issue. Accordingly, the Plaintiff must allege that GECC had some kind of pecuniary interest in the transac-

---

**29.** The comments to the Second Restatement explain:

The defendant's pecuniary interest in supplying the information will normally lie in a consideration paid to him for it or paid in a transaction in the course of and as a part of which it is supplied. It may, however, be of a more indirect character. Thus the officers of a corporation, although they receive no personal consideration for giving information concerning its affairs, may have a pecuniary interest in its transactions, since they stand to profit indirectly from them, and an agent who expects to receive a commission on a sale may have such an interest in it although he sells nothing. *The fact that the information is given in the course of the defendant's business, profession or employment is a sufficient indication that he has a pecuniary interest in it, even though he receives no consideration for it at the time. It is not, however, conclusive.* But when one who is engaged in a business or profession steps entirely outside of it, as when an attorney gives a casual and offhand opinion on a point of law to a friend whom he meets on the street, or what is commonly called a "curbstone opinion," it is not to be regarded as given in the course of his business or profession; and since he has no other interest in it, it is considered purely gratuitous. The recipient of the information is not justified in expecting that his informant will exercise the care and skill that is necessary to insure a correct opinion and is only justified in expecting that the opinion will be an honest one. Restatement (Second) of Torts § 552 cmt. d (emphasis added); *see also, Sports Immortals, Inc.*, 67 So.3d at 440–41.

tion in which the information was given and that the information was not given gratuitously. Because the Plaintiff fails to do so, Count 7 will be dismissed for the additional reason that the Plaintiff fails to allege that GECC had a pecuniary interest in supplying the alleged misinformation.

## V. Counts 1 and 6—Conspiracy to commit fraud and conspiracy to commit fraudulent concealment

▇▇▇▇ In order to state a claim for civil conspiracy, the Plaintiff must allege the following: "(1) an agreement between two or more parties; (2) to perform an unlawful act; (3) the doing of some overt act in pursuance of the conspiracy, and (4) damage to plaintiff as a result of the acts done under the conspiracy." *Bray & Gillespie Mgmt. LLC v. Lexington Ins. Co.*, 527 F.Supp.2d 1355, 1370 (M.D. Fla. 2007) (*citing Fla. Fern Growers Ass'n v. Concerned Citizens of Putnam Cnty.*, 616 So.2d 562, 565 (Fla. 5th DCA 1993)); *see also, Vance v. Chandler*, 231 Ill.App.3d 747, 173 Ill.Dec. 525, 597 N.E.2d 233, 236 (1992) (citations omitted); *Tatone v. SunTrust Mortg., Inc.*, 857 F.Supp.2d 821, 838–39 (D.Minn.2012). "[E]ach [co-conspirator] 'need only know of the scheme and assist in it in some way to be held responsible for all of the acts of his coconspirators.'" *SunGard Pub. Sector, Inc. v. Innoprise Software, Inc.*, No. 6:10–cv–1815–Orl–28GJK, 2012 WL 360170, at *7 (M.D.Fla. Feb. 2, 2012) (*quoting Charles v. Fla. Foreclosure Placement Ctr., LLC*, 988 So.2d 1157, 1160 (Fla. 3d DCA 2008)). A civil conspiracy claim is not an independent cause of action. *Behrman v. Allstate Life Ins. Co.*, 178 Fed.Appx. 862, 863 (11th Cir.2006). "Thus, 'an actionable conspiracy requires an actionable underlying tort or wrong.'" *Bray & Gillespie Mgmt. LLC*, 527 F.Supp.2d at 1370 (*quoting Fla. Fern Growers Ass'n*, 616 So.2d at 565); *see also, Tatone*, 857 F.Supp.2d at 839.

### i. Count 1—Conspiracy to commit fraud

▇▇▇ Count 1 of the Amended Complaint asserts a claim for civil conspiracy to commit fraud. The crux of the cause of action is that GECC conspired with Petters and Petters Capital to commit fraud upon the Palm Beach Funds. Thus, common law fraud is the underlying tort.[30] Because civil conspiracy alone is not an independent tort, the Plaintiff must properly allege the elements of civil conspiracy *and* the elements of common law fraud in order to state an actionable claim for civil conspiracy. At the outset, the Court finds that the Plaintiff sufficiently alleges the elements of common law fraud.[31] The Plaintiff identifies a false statement of material fact which was made with knowledge that it was false and which was intended to induce the Palm Beach Funds to act: "Petters and Petters Capital knowingly communicated false and fraudulent information to the Palm Beach Funds to induce them to fund [Petters' purchase financing operation]. These fraudulent representations included that Petters' business was a lawful and profitable enterprise[32] and

---

**30.** As discussed in Section IV(B)(ii), *supra*, when the Plaintiff uses the generic term "fraud," the Court assumes it to mean "common law fraud."

**31.** The elements of common law fraud are: (1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement. *Wernikoff*, 315 Ill.Dec. 524, 877 N.E.2d at 16.

**32.** It can be assumed from the very nature of a Ponzi scheme that the perpetrator of the Ponzi scheme made false representations to lenders/investors as to the profitability and legality of the fraudulent enterprise.

were continuously made from 2002 through 2008." Am. Compl. ¶ 168. The Plaintiff also alleges that the Palm Beach Funds relied upon the truth of the representations to their detriment: "The Palm Beach Funds each relied on these misrepresentations to their detriment, causing damages." *Id.* The allegations regarding Petters Ponzi scheme contained in paragraphs 1 through 165, which the Plaintiff re-alleges in Count 1, add the factual detail required by Federal Rule of Civil Procedure 9(b).

The Plaintiff sufficiently alleges the first, second, and fourth elements of a civil conspiracy. As to the first and second element—an agreement between two or more parties to perform an unlawful act—the Plaintiff alleges:

169. On or about October 24, 2000, GECC obtained actual knowledge of the Conspiracy and Conspiratorial Objective. Shortly thereafter, GECC entered into an agreement with Petters and Petters Capital, tacit if not explicit, for GECC to join and further the Conspiracy and the Conspiratorial Objective.

170. GECC would remain silent about it discovery of the Conspiracy and assist in its continued fraudulent concealment. Petters would cause GECC to be paid from new, defrauded lenders rather than from the proceeds of legitimate operations. GECC would receive not only the monies which were owed to it (*i.e.*, principal, interest and certain fees), but also additional monies which were not: the unearned Final Success Fee.

171. GECC knowingly assisted, furthered, encouraged and concealed the Conspiracy, by, among other things:

a) Failing to retract or correct the Recommendation Letter;

b) Knowingly permitting its name to be used in furtherance of the Conspiracy;

c) Demanding and accepting the entire Final Payment in an atypical and improper manner;

d) Retaining all unearned Success Fees, including the Final Success Fee;

e) Failing to disclose the Conspiracy to anyone, including but not limited to the First Investors, the Second Investors, law enforcement or Costco;

f) Failing to take legal or other public action against Petters or Petters Capital;

g) Deferring any actions based on Petters and Petters Capital's representations that GECC would get paid the Final Payment;

h) Releasing the Petters Capital stock pledge;

i) Failing to advise anyone, including law enforcement, Costco, the payor bank for the Fraudulent Checks or other lenders about the Fraudulent Checks;

j) Communicating the January 30th Audit Letter Response;

k) Concealing the Fraudulent Checks from Ernst & Young;

*l*) Knowingly paving the way for the Palm Beach Funds to use the same SPE that GECC had used in its dealings with Petters (a known vehicle of fraud);

m) Causing the termination of the GECC Financing Statement in 2003;

n) Authorizing Petters Capital to act as its agent for purposes of terminating the GECC Financing Statement;

o) Failing to make disclosures to applicable regulators; and

p) Violating its Integrity Policies, Internal Policies and industry standards,

172. GECC joined the Conspiracy so it could get paid and then retain what it received. GECC had an extraordinary economic motivation for this: in excess of $45 million.

Am. Compl. ¶¶ 169–72. These allegations are sufficient to allege a tacit agreement between GECC and Petters, and as discussed above, the Plaintiff sufficiently alleges the elements of common law fraud, which is the underlying tort or "unlawful act." The Plaintiff also properly alleges the fourth element of civil conspiracy—damage to plaintiff as a result of the acts done under the conspiracy. The Plaintiff alleges that "[a]s a result of the Conspiracy, and GECC's joinder thereof, and the actions and inactions committed by Petters and Petters Capital ... and GECC ... in furtherance of the Conspiracy, the Palm Beach Funds were damaged in excess of $1 Billion." Am. Compl. ¶ 173.

Finally, the Plaintiff sufficiently alleges the third element of conspiracy—the doing of some overt act in pursuance of the conspiracy. The Plaintiff alleges that GECC knowingly assisted, furthered, encouraged and concealed Petters' fraud by, among other things:

(a) Failing to retract or correct the Recommendation Letter;

(b) Knowingly permitting its name to be used in furtherance of the Conspiracy;

(c) Demanding and accepting the entire Final Payment in an atypical and improper manner;

(d) Retaining all unearned Success Fees, including the Final Success Fee;

(e) Failing to disclose the Conspiracy to anyone, including but not limited to Petters' investors, law enforcement, or Costco;

(f) Failing to take legal or other public action against Petters or Petters Capital;

(g) Deferring any actions based on Petters and Petters Capitals' representations that GECC would get paid the Final Payment;

(h) Releasing the Petters Capital stock pledge;

(i) Failing to advise anyone about the Fraudulent Checks;

(j) Communicating the January 30th Audit Letter Response;

(k) Concealing the Fraudulent Checks from Ernst & Young;

(l) Knowingly paving the way for the Palm Beach Funds to use the same SPE that GECC had used in its dealing with Petters;

(m) Causing the termination of the GECC Financing Statement in 2003;

(n) Authorizing Petters Capital to act as its agent for purposes of terminating the GECC Financing Statement;

(o) Failing to make disclosures to applicable regulators; and

(p) Violating its Integrity Policies, Internal Policies, and industry standards.

Am. Compl. ¶ 171. Some of these allegations, as discussed in Section V(B), *infra*, amount to little more than failing to blow the whistle on Petters' fraud. The Court has already found that GECC had no duty to the Palm Beach Funds to disclose Petters' fraud, and mere inaction may not be enough to constitute an "overt act." However, the remaining allegations, when considered in the context of the detailed allegations in paragraphs 1 through 165, plausibly amount to at least one affirmative overt act which furthered the Petters' conspiracy. Accordingly, the Court finds that these allegations are sufficient to establish at this stage in the proceedings that GECC committed an overt act in fur-

therance of Petters' fraud upon the Palm Beach Funds.

For the reasons just discussed, the Court finds that the Plaintiff states a claim for conspiracy to commit fraud.

### ii. Count 6—Conspiracy to commit fraudulent concealment

In Count 6 of the Amended Complaint, the Plaintiff asserts a claim for conspiracy to commit fraudulent concealment. The crux of this cause of action is that GECC conspired with Petters and Petters Capital to commit fraud concealment with respect to the Palm Beach Funds. Thus, fraudulent concealment is the underlying tort. As with the claim for conspiracy to commit fraud, the Plaintiff must allege the elements of civil conspiracy along with the elements of fraudulent concealment in order to properly state a claim for conspiracy to commit fraudulent concealment. For the reasons discussed below, the Court finds that the Plaintiff fails to do so.

■ Although Count 6 contains allegations which would be sufficient to establish a claim for fraudulent concealment against Petters, Count 6 contains virtually no allegations relating to GECC's alleged participation in a conspiracy to commit fraudulent concealment. There is no allegation that GECC and Petters had an agreement, either tacit or explicit, to commit fraudulent concealment. There is no allegation that GECC did any overt act in pursuance of an alleged conspiracy. In fact, the only allegation in Count 6 that even mentions GECC is the following: "GECC had actual knowledge of the Conspiracy." Am. Compl. ¶ 207. Accordingly, Count 6 fails to state a claim for conspiracy to commit fraudulent concealment and will be dismissed.

## VI. Count II—Aiding and abetting fraud

■ In Count II of the Amended Complaint, the Plaintiff asserts a claim for aiding and abetting fraud. Liability for aiding or abetting fraud requires a showing that an underlying fraud existed, the defendant had actual knowledge of the fraud, and the defendant substantially assisted the commission of the fraud. *ZP No. 54 Ltd. P'ship v. Fid. & Deposit Co.,* 917 So.2d 368, 372 (Fla. 5th DCA 2005); *E-Shops Corp. v. U.S. Bank Nat'l Ass'n,* 795 F.Supp.2d 874, 877 (D.Minn.2011); *Sirazi v. Gen. Mediterranean Holding, SA,* No. 12 C 0653, 2013 WL 812271, at *7 (N.D.Il. Mar. 5, 2013) (*quoting Thornwood, Inc. v. Jenner & Block,* 344 Ill.App.3d 15, 278 Ill.Dec. 891, 799 N.E.2d 756, 767 (2003)).

■ Here, the Plaintiff fails to sufficiently allege the existence of an underlying fraud. As previously noted by the Court, fraud is not simply a generic term for wrongdoing. Rather, it is a specific tort, the elements of which must be alleged with particularity under Rule 9(b). It is true that the hallmark of a Ponzi scheme, which is inherently fraudulent in nature, is "that the entity gives the false appearance of profitability by seeking investments from new sources rather than earning profits from assets already invested." *Carney v. Lopez,* No. 3:12–cv–00182 (SRU), 2013 WL 1274741, at *9 (D.Conn. Mar. 28, 2013). Accordingly, when properly pled, the existence of a Ponzi scheme can be the basis for a claim for common law fraud or aiding and abetting fraud. However, in the operative part of Count 2, the Plaintiff makes virtually no allegations which refer to the specifics of the underlying fraud. Although the Plaintiff "re-alleges paragraphs 1 through 165" within Count 2, this is not sufficient to put GECC or the Court on notice as to which of the

165 allegations support the Plaintiff's claim for aiding and abetting fraud.[33]

Further confusing the issue is the fact that the Plaintiff asserts four allegedly separate and distinct fraud claims against GECC (fraud by omission, fraudulent misrepresentation, fraudulent concealment, and fraud) in addition to two other conspiracy claims (conspiracy to commit fraud and conspiracy to commit fraudulent concealment). The Plaintiff undoubtedly understands that fraud comes in many forms and that any one of these forms could potentially serve as the basis for the Plaintiffs aiding and abetting claim. Without any specific allegations as to the underlying fraud in Count 2, it is impossible to know which form of fraud the Plaintiff is referring to when, for example, the Plaintiff alleges:

> 176. GECC knew that Petters and Petters Capital were seeking to defraud the new lenders, the Palm Beach Funds.

> 177. GECC knew that the new lender to Petters Capital, the Palm Beach Funds, was to be defrauded. Alternatively, the Palm Beach Funds were within a class of persons GECC knew would be defrauded.

> 178. GECC had an extraordinary economic motivation to substantially assist the fraud.

> 179. GECC substantially assisted, aided, abetted, encouraged, concealed, and facilitated the fraud upon the Palm Beach Funds.

> 180. GECC's substantial assistance was intended to, and did, aid the primary fraud.

> 181. GECC's silence and inaction was consciously and purposely intended to aid and further the primary fraud.

> 182. GECC had a duty to disclose the truth to the Palm Beach Funds.

> 183. GECC's substantial assistance was a substantial factor in furthering the fraud upon the Palm Beach Funds.

Am. Compl. ¶¶ 176–183. Accordingly, the Plaintiff fails to allege with the requisite specificity required by Rule 9(b) the underlying fraud upon which Count 2 is based.

■ Furthermore, the Plaintiff fails to allege that GECC provided "substantial assistance" to Petters' fraud. As to this element, the Plaintiff alleges that GECC knowingly assisted, furthered, encouraged and concealed Petters' fraud by, among other things:

> (a) Failing to retract or correct the Recommendation Letter;

> (b) Knowingly permitting its name to be used in furtherance of the Conspiracy;

---

**33.** The Plaintiff's Amended Complaint is a classic "shotgun pleading." "Shotgun pleadings" do not comply with Rule 8(a)'s requirement for a "short and plain statement" and thus make " 'it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief' " *Peavey v. Black,* 476 Fed.Appx. 697, 699 (11th Cir.2012) (*quoting Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.,* 77 F.3d 364, 366–67 (11th Cir.1996)). A shotgun pleading "invariably begin[s] with a long list of general allegations, most of which are immaterial to most of the claims for relief." *Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.,* 162 F.3d 1290, 1333 (11th Cir.1998). The pleading then " 'incorporate[s] every antecedent allegation by reference into each subsequent claim for relief' " *Liebman v. Deutsche Bank Nat. Trust Co.,* 462 Fed.Appx. 876, 879 (11th Cir.2012) (*quoting Wagner v. First Horizon Pharm. Corp.,* 464 F.3d 1273, 1279 (11th Cir.2006)). "The result is that each count is replete with factual allegations that could not possibly be material to that specific count, and that any allegations that are material are buried beneath innumerable pages of rambling irrelevancies." *Magluta v. Samples,* 256 F.3d 1282, 1284 (11th Cir.2001).

348

(c) Demanding and accepting the entire Final Payment in an atypical and improper manner;

(d) Retaining all unearned Success Fees, including the Final Success Fee;

(e) Failing to disclose the Conspiracy to anyone, including but not limited to Petters' investors, law enforcement, or Costco;

(f) Failing to take legal or other public action against Petters or Petters Capital;

(g) Deferring any actions based on Petters and Petters Capitals' representations that GECC would get paid the Final Payment;

(h) Releasing the Petters Capital stock pledge;

(i) Failing to advise anyone about the Fraudulent Checks;

(j) Communicating the January 30th Audit Letter Response;

(k) Concealing the Fraudulent Checks from Ernst & Young;

(l) Knowingly paving the way for the Palm Beach Funds to use the same SPE that GECC had used in its dealing with Petters;

(m) Causing the termination of the GECC Financing Statement in 2003;

(n) Authorizing Petters Capital to act as its agent for purposes of terminating the GECC Financing Statement;

(o) Failing to make disclosures to applicable regulators; and

(p) Violating its Integrity Policies, Internal Policies and industry standards.

Am. Compl. ¶ 171. Out of these sixteen specific instances, at least eight ((a), (b), (d), (e), (f), (g), (i), and (o)) consist of nothing more than a failure to act. Under limited circumstances, courts have held that inaction can form the basis of aiding and abetting liability if it rises to the level of providing substantial assistance. *Mat-thews v. Eichorn Motors, Inc.*, 800 N.W.2d 823, 831 (Minn.Ct.App.2011). However, "state and federal courts generally have held that a defendant's failure to act does not constitute 'substantial assistance.'" *Id.; see also, Sharp Int'l Corp. v. State Street Bank and Trust Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 49 (2d Cir.2005) (internal citation marks omitted) (*quoting Kaufman v. Cohen*, 307 A.D.2d 113, 760 N.Y.S.2d 157, 170 (2003)); *Hines v. Fi-Serv, Inc.*, No. 8:08–cv–2569–T–30AEP, 2010 WL 1249838, at *4 (M.D.Fla. Mar. 25, 2010). The Court finds that these allegations, which amount to nothing more than inaction, do not rise to level of substantial assistance and thus cannot provide the basis for aiding and abetting liability.

The remaining allegations, even when taken together, do not amount to "substantial assistance." Substantial assistance requires an affirmative step on the part of the aider-and-abettor that is a "substantial factor" in causing the breach of duty. *Varga v. U.S. Bank. Nat'l Ass'n*, 952 F.Supp.2d 850, 859 (D.Minn.2013) (*citing Am. Bank of St. Paul v. TD Bank, N.A.*, 713 F.3d 455, 463 (8th Cir.2013)). "To determine what constitutes substantial assistance, courts generally consider the five factors listed in the comments to section 876 of the Restatement (Second) of Torts." *Id.* "Those factors are: the nature of the act encouraged, the amount of assistance given, the aider-and-abettor's presence or absence at the time of the tort, its relation to the primary actor, and its state of mind." *Id.* (*citing In re Tempromandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 113 F.3d 1484, 1495 (8th Cir.1997)). Courts must also consider "the potentially devastating impact aiding and abetting liability might have on commercial relationships." *Id.*

Assuming it were true that GECC did every one of the things alleged in para-

graphs (c), (h), (j), (k), (1), (m), (n), and (p), it is still not plausible that these actions amount to "substantial assistance" to Petters' multi-billion dollar fraud. The amount of assistance alleged is minor in comparison to the massive scope of Petters' overall fraudulent scheme. As to the "aider-and-abettor's presence or absence at the time of the tort," there is certainly no allegation that GECC maintained any kind of physical presence during Petters' fraud upon the Palm Beach Funds. Moreover, GECC had all but completely extricated itself from its relationship with Petters by the time the first of the Palm Beach Funds was even formed. The only alleged relationship GECC had with Petters was that GECC was at one time, a commercial lender to Petters. With regard to GECC's "state of mind," the Plaintiff alleges that GECC knowingly assisted in Petters' fraud and was motivated by its desire to secure repayment of its $50 million loan and preserve its reputation. Accordingly, the nature of the act encouraged and GECC's alleged state of mind weigh in favor of a finding that the Plaintiff sufficiently alleges the substantial assistance element. However, the other factors, coupled with the potentially devastating impact aiding and abetting liability might have on commercial relationships, particularly commercial lending relationships, outweigh the nature and state of mind factors. Accordingly, the Court finds that the Plaintiff fails to plausibly allege the substantial assistance element of his claim for aiding and abetting fraud.

For the reasons just discussed, the Court will dismiss Count 2 for failure to state a claim for aiding and abetting fraud which is plausible on its face.

## VII. *Conclusion*

The crux of the Plaintiffs Amended Complaint is that GECC discovered Petters' fraud and arranged not to be among his victims, but did not alert anyone else, which meant that Petters was able to continue to perpetrate his Ponzi scheme. "On the one hand, this seems repugnant; on the other hand, ... [the] discovery that [Petters] was rife with fraud was an asset of [GECC], and [GECC] had a fiduciary duty to use that asset to protect its own shareholders[.]" *In re Sharp Int'l Corp.*, 403 F.3d at 52. Whatever GECC knew about Petters' fraud, it came by that knowledge through diligent inquiries that any other lender, including the Palm Beach Funds, could have made. The Plaintiff fails to establish any general duty on the part of GECC "to precipitate its own loss in order to protect lenders that were less diligent." *Id.* at 53.

That being said, for the reasons discussed in the preceding sections, the Court grants GECC's Motion to Dismiss in part and will dismiss without prejudice Counts 2 through 9 of the Plaintiff's Amended Complaint for failure to state a claim upon which relief can be granted. With regard to Counts 2 through 8, the Plaintiff fails to meet the pleading requirements articulated in Federal Rule of Civil Procedure 9(b). With regard to Count 9, the Plaintiff fails to meet the pleading requirements articulated in Federal Rule of Civil Procedure 8(a). Finally, the Court denies GECC's Motion to Dismiss as to Count 1, as the Court finds that the Plaintiff sufficiently alleges the elements of a claim for civil conspiracy to commit fraud.

In the event the Plaintiff elects to file a second amended complaint and GECC files a motion to dismiss that complaint, the Court shall not consider any new arguments which could have been raised in a previous motion to dismiss but were not. Finally, should the Plaintiff file a second amended complaint which fails to comply

with the terms of this Order, the complaint shall be dismissed with prejudice.

### ORDER

The Court, being fully advised in the premises and for the reasons discussed above, hereby **ORDERS AND ADJUDGES** that:

1. GECC's Motion to Dismiss (ECF No. 32) is **GRANTED IN PART** and **DENIED IN PART.**

2. The Motion to Dismiss is granted to the extent it requests dismissal of Counts 2 through 9 and denied to the extent it requests dismissal of Count 1.

3. Counts 2 through 9 of the Amended Complaint (ECF No. 26) are **DISMISSED WITHOUT PREJUDICE** to the Plaintiff filing a second amended complaint within twenty-one (21) days of the entry of this Order.